Collier v. Blake.

---

ROBERT A. COLLIER, *et al.*, v. J. HENRY BLAKE, *et al.*

1. TITLE TO LANDS HELD IN TRUST; *Death of Trustee; Duty of District Court.* Where the title to real estate in Kansas is held by a person who holds it as a sole trustee of an express trust, and such person dies, the trust immediately vests in the district court of the county in which the real estate is situated, and it is the duty of such court, upon the application of some person interested in the trust, to forthwith appoint a successor to said trustee, and the trust will then vest in the newly-appointed trustee.

Statement of the Case.

2. EVIDENCE; *Will made and Probated in Foreign State; Competency.* Where the rights of all the parties to certain real estate are derived from certain deeds of trust made to one W. T., and these deeds of trust refer to a certain will of one I. T., and also to a certain record of a certain court in Kentucky, where said will was probated, as showing the nature and character of the trust created by said deeds, *held,* that it was not error for the court below to allow said will and said record to be introduced in evidence, although the will had never been probated in Kansas.

3. TRUSTEE; *Power to Sell and Convey Lands held in Trust, when Cestui que Trust cannot convey.* Where a certain will contained among other provisions the following, to-wit: "I give to my son Anderson one-fourth part of my estate, out of which one thousand dollars is to be deducted, as stated in this will, for the use of Miss E. D. It is understood that whatever falls to him, shall not be subject to any debts owing by him at this time, or may be owing hereafter, but my son Anderson is to have the proceeds of whatever sum may fall to him, but the principal is to be in the hands of a faithful trustee, who shall take charge of said estate, whatever it may be, and hold the same for the use and benefit of my said son Anderson; and for the purpose of carrying out this gift, I make and appoint my son Wilkinson, trustee for my son Anderson, during his lifetime, and at the death of my son Anderson, one-fourth part of the amount of said estate is to be given to my grandson William T., and one-fourth to my granddaughter Mary Emily T., and the balance to be equally divided between the other five grandchildren, Josephine S., Genevieve T., Alonzo T., Clifton T., and Irene T." And where under this will, and under the order of the proper court, the said trustee invested the said trust fund coming into his hands by virtue of said will, in real estate in Johnson county, Kansas, taking deeds of conveyance to himself therefor, which deeds conveyed said real estate to himself, in fee simple, in trust for said Anderson and said grandchildren, according to said will; *held,* that said Anderson and said grandchildren did not take or have by virtue of said will and said deeds any such vested legal interest in said real estate that they could by their deeds of conveyance to a third person, (but without any order or decree of any court therefor,) defeat or terminate said trust; but on the contrary, the trustee, notwithstanding their deeds, would continue to hold the legal title to said real estate, with the power, under the direction of the proper court, to execute said trust, and could by order or decree of the proper court, sell and convey said real estate, and invest the trust fund in other property.

*Error from Johnson District Court.*

BLAKE, as trustee, commenced an action in the district court of Johnson county against Anderson Turpin, *Robert A.*

*Collier*, William Turpin, Josephine Sparks, Hiram Sparks, Irene Smith, O. M. Smith, Alonzo H. Turpin, *William Henry Collier*, Emma Burgess, and Sabina Turpin, to set aside and annul a certain quitclaim deed executed by Anderson Turpin to his children, and certain quitclaim deeds made by said children to said *Robert A. Collier;* to require said *Robert* to account to said *Blake*, as trustee of said Anderson Turpin, and for an order to sell the lands held by said *Blake* as such trustee. The answer and claim made by *Collier*, and all the facts and proceedings necessary to a proper understanding of the case, are stated in the opinion, *infra*. The action was tried at the November Term 1872 of the district court. Findings and judgment in favor of the plaintiff, according to the prayer of his petition. *Robert A. Collier* and *Wm. H. Collier*, two of the defendants, appeal, and bring the case here on error, joining their co-defendants and the said *Blake* as defendants in errror.

*Clough & Wheat*, and *J. D. Shafer*, for plaintiffs in error.

*Holmes & Dean*, and *F. M. Black*, for defendants in error.

The opinion of the court was delivered by

VALENTINE, J.: On May 14th 1855 Isaac Turpin, of Jessamine county, Kentucky, made his last will and testament, and in the same year died. On March 3d 1856 this will was probated in the county court of said Jessamine county. The will among other provisions contains the following, to-wit:

"Next, I give to my son Anderson Turpin one-fourth part of my estate, out of which one thousand dollars is to be deducted, as stated in this will, for the use of Miss Eliza Dearinger. It is understood that whatever falls to him shall not be subject to any debts owing by him at this time, or may be owing hereafter, but my son Anderson is to have the proceeds of whatever sum may fall to him, but the principal is to be in the hands of a faithful trustee, who shall take charge of said estate, whatever it may be, and hold the same for the use and benefit of my said son Anderson Turpin; and, for

the purpose of carrying out this gift, I make and appoint my son Wilkinson Turpin, trustee for my son Anderson, during his lifetime; and, at the death of my son Anderson, one-fourth part of the amount of said estate is to be given to my grandson William Turpin, and one-fourth to my granddaughter Mary Emily Turpin, and the balance to be equally divided between the other five grandchildren, Josephine Sparks, Genevieve Turpin, Alonzo Turpin, Clifton Turpin, and Irene Turpin."

All the above-mentioned grandchildren were the children of said Anderson Turpin. The trustee accepted said trust, and on settlement of the estate there came into his hands, as such trustee, a considerable amount of money. The trustee invested portions of this fund in the lands and lots in controversy, and took conveyances therefor to himself; one dated the 8th of March 1859, from one Collins; one dated the 6th of June 1860, from one Hill; and one dated the 16th of December 1858, from one William C. Turpin. The substantial portions of said first-mentioned deed, so far as it is necessary to state them in this opinion, read as follows:

Said Collins "does grant, bargain, and sell unto said Wilkinson Turpin, trustee of said Anderson Turpin and his children, in fee simple, the land" (described in the deed,) "to have and to hold the said tract of land unto the said Wilkinson Turpin, as trustee for the said Anderson Turpin and his children, in fee simple forever, together with all the appurtenances thereunto belonging. And it is understood that the consideration-money for said tract of land is derived from the estate of Isaac Turpin, deceased, and that the said Wilkinson Turpin holds said land as trustee of the said Anderson Turpin and his children, as designated under the last will and testament of the said Isaac Turpin, deceased, of record in the clerk's office of the Jessamine county court, for the state of Kentucky; and that the said fund has been applied and invested for the purchase of said land by the said Wilkinson Turpin, in pursuance of the judgment of the circuit court for the county of Jessamine, state of Kentucky, rendered in a suit of equity of the said Wilkinson Turpin and Jane Turpin his wife, against the said Anderson Turpin and others," etc.

The other deeds to the said trustee are of like tenor and effect. The district court finds that there was thus invested

in lands of such trust fund the sum of $5,000. Anderson Turpin lived upon this property, or at least a part thereof, from 1860 to June 1863, when he was compelled to leave the same, since which time he has neither occupied the property nor received any benefits therefrom. On August 5th 1870 Wilkinson Turpin, the trustee, died, and on the 15th of November 1870 the district court of Johnson county, Kansas, on the application of Anderson Turpin, appointed J. Henry Blake, the plaintiff below, the successor in said trust, with all the powers possessed by the original trustee, which appointment he accepted.

Three of the children of Anderson Turpin mentioned in the will, to-wit, Mary, Emily, and Clifton, died before the commencement of this suit. The defendant R. A. Collier married Genevieve Turpin, she also being dead at the commencement of this suit, and the defendants William Henry Collier and Emma Burgess are her children. At or about the time Anderson Turpin was compelled to leave said premises, to-wit, in 1863, he, as well as the trustee, authorized defendant R. A. Collier to take charge of the property as their agent, and to rent the same, which he did; and on the 8th of June 1865, the said trustee, Wilkinson Turpin, by letter of attorney, constituted and appointed said Collier, at his request, agent, and thereby authorized Collier, in the name of the said Wilkinson Turpin, as trustee, to take possession of and rent out all the property in controversy. On the 4th of August 1865 Anderson Turpin made a deed of quitclaim of said premises to his children, William Turpin, Josephine Sparks, Irene Smith, Alonzo Turpin, and Genevieve Collier, she then being alive. On the 7th of October 1865, Alonzo Turpin, and on the 7th of June 1865, Sparks and wife, and on the 25th of February 1865, Irene Smith and husband, made to defendant Collier their respective deeds of quitclaim to said property. On the 23d of January 1865, defendant R. A. Collier caused to be made to him two tax deeds, both together covering the property, except house and lot, in controversy, which tax deeds recite that the lands were sold on the 7th of January

1862 for taxes of 1860 to Johnson county, and certificates assigned by Johnson county, one to one Gregg, and the other to one Ocheltree, and by them assigned to Collier on the 24th of December 1864. There is evidence not only that Collier was agent when he took these tax deeds, but also that he had received and then had money from Anderson Turpin to pay the taxes with. It is also found by the court that Collier himself procured the deed from Anderson Turpin to his children to be made through urgent solicitations and for the purpose that Collier himself might obtain the title, and that such deed was procured without consideration. The cause was tried on an amended petition, answer, and reply. The petition sets out the will, trusteeship, investment of funds in these lands, and the terms of the trust, death of the old trustee, and appointment of the new trustee; that the property produces nothing, and attacks the deed from Anderson as conveying nothing, and as having been fraudulently procured, and asks that the property be sold and the principal sum be set apart at interest, and the balance, if anything, be paid to Anderson. The answer of defendant Collier claims a different construction to be put upon the trust, sets up the deed from Anderson Turpin to his children, and deeds from part of these to Collier, and claims title thereunder, sets up the tax deeds and claims title under them, and also sets out the power of attorney from the trustee, and claims that taxes paid by him amount to as much or more than rents received, and sets up the one, two, three, and five-year statutes of limitations. The reply denies all new matter, and states the agency of Collier, and sets out fully the fraud complained of in procuring the deed from Anderson Turpin.

The action was tried before the court without a jury, and the court made separate findings of fact and of law. We shall consider only the material and substantial questions involved in this case, and shall pass over the others without noticing them. The appointment of J. Henry Blake was valid. "Upon the death of a sole or surviving trustee of an express trust, the same shall vest in the court having

jurisdiction thereof, and such court shall forthwith appoint a successor, in whom the trust shall vest." (Gen. Stat., 1098, § 10.) The district court of Johnson county unquestionably had jurisdiction to make the appointment, and the proceedings with reference thereto were unquestionably regular. Wilkinson Turpin was the trustee of an express trust. The deeds to him from Collins, Hill and William C. Turpin, made him so, and they referred to the will of Isaac Turpin, which explained the nature, extent and character of the trust, and which also made him the trustee of an express trust. Said deeds and said will are the common muniments of title of all the parties. All the parties hold under them. And the rights of all the parties are derived from them, and are to be determined by their terms. Hence, all that we have to do, in order to determine the rights of the parties, is to construe said instruments. All the parties admit the existence of said instruments. All admit the character of their contents. All admit their validity. And hence it makes no difference whether the will was ever probated in Kansas or not. The sections of the statute referred to by the plaintiffs in error, with regard to probating wills, have no application to this case. None of the parties in this case are holding adversely to the will, but all are holding under it. Said sections probably apply only to property in this state upon which the will may operate at the time of the death of the testator so as to transfer the property in a different manner from what the law, aside from the will, would transfer it. But whether this is so or not, the deeds to Wilkinson Turpin, under which all the parties claim, referred to said will as showing the nature of the trust of which Wilkinson Turpin was the trustee, and referred to said will as being of record in the office of the clerk of the county court of Jessamine county, Kentucky, where said will was probated, and hence it was not error for the court below to allow proof of said will, or proof of the said record of the same, to be introduced on the trial of the case, although there was no proof that said will had ever been probated in Kansas. Even if

said will and said record were void as against the heirs of
Isaac Turpin deceased, still they are valid as against any
party claiming under said deeds, as they show the kind
of trust created by said deeds, its nature and extent.
What then were and are the rights of the parties under
said deeds and said will? The rights of J. Henry Blake
are the same as the rights of Wilkinson Turpin the
original trustee would be if he were still living and
still the trustee. (Gen. Stat., 1098, § 10.) And hence it must
follow that at least the whole legal estate in the property in
controversy is now in said Blake. We think the whole estate,
legal and equitable, in said property is in Blake. He has the
whole power, under the instructions and supervision of the
court, to take care of it, to use it, and to dispose of it. Neither
Anderson Turpin, nor any one of Anderson Turpin's children,
has any interest in the real estate *as* real estate. They have
an interest in the trust fund, which is for the time being in-
vested in real estate. They had that interest in the fund
before it was invested in real estate; they have it now, and
they will continue to have such interest in said fund, even if
the real estate be sold and the fund invested in something
else. Remotely they have an interest in whatever the fund
may be invested in, but they have no such direct interest in
the thing in which the fund may be invested; as to constitute
an estate, when the fund is invested in real estate. The right
of Anderson Turpin, under the will, is to have only the pro-
ceeds of the fund, the increase thereof. He is not to have
any of the principal of the fund; and he has never had any
power to sell it or incumber it. The principal of the fund is
to remain a permanent fund for the benefit of Anderson Tur-
pin's children. They are to have the fund after Anderson
Turpin's death. But their interest in the fund does not con-
stitute an estate in the property in which the fund may for
the time being be invested. Or at most, such interest can
amount only to a contingent remainder therein. It cannot
amount to any vested estate. Their interest will not pre-

vent the trustee from selling the property by order of the court, freed from all right, title or interest which they may have therein. And if the property is unproductive, so that no proceeds are procured therefrom for the benefit of Anderson Turpin, it ought to be so sold. They may therefore never have any estate in the property. If Anderson Turpin should die, while the title to the property is still vested in the trustee, his children would then have the right to have the title conveyed to them, if practicable, according to their respective interests in the trust fund, but their right at most can only amount to a contingent remainder. Neither Anderson Turpin nor his children had, at the time they executed said quitclaim deeds, any interest in the property in controversy which they could convey. Hence the quitclaim deed from Anderson Turpin to his children, and the quitclaim deeds from his children to Collier, were void. Even if procured and executed in good faith, still they were void as conveyances. And being void as conveyances, Anderson Turpin and his children could not defeat or terminate the trust by making them. They alone had no power, in any manner, to terminate the trust. Usually, where all the beneficiaries of a trust unite, and none of them are laboring under disability, they may with the consent of the court terminate the trust. But when they attempt to terminate the trust in contravention of the object of the trust, they certainly cannot do so, unless they have the consent of the court; and the consent of the court should generally not be given in such cases. In the present case it would be in violation of the object of the trust to terminate the same before the death of Anderson Turpin. It was clearly the intention of Isaac Turpin, when he created the trust, that Anderson Turpin should have the benefit of the increase of the trust fund during his lifetime, and that the trust should not during that time be terminated, diverted, incumbered, diminished or materially impaired. But whatever interest Anderson Turpin may have had in said property, still he was prohibited by statute from dis-

posing of the same. The statute in force when said deeds creating the trust, and when said quitclaim deeds were made, reads as follows:

"SEC. 4. No person beneficially interested in a trust for the receipt of the rents and profits of lands can dispose of such interest, unless the right to make disposition thereof is conferred by the instrument creating the trust." (Laws of 1858, page 402, § 4; Comp. Laws, 1862, page 897, § 4.)

Now this law was in force when Wilkinson Turpin as trustee purchased the land in controversy; it was in force when Anderson Turpin made said quitclaim deed to his children, and it was in force when his children made said quitclaim deeds to Collier; and we suppose it will be admitted that Anderson Turpin was beneficially interested in the receipt of the rents and profits of said land. And will it be contended that a trust in lands in Kansas can be created, and the trust not be governed by the laws of Kansas?

It is not necessary to discuss any of the other questions supposed to be involved in this case.

The judgment of the court below is affirmed.

All the Justices concurring.