JOHN P. HARRIS, *as Executor of the Estate of John Fulcher, deceased,* v. JOHN W. CALVERT.

No. 29.

DEATH OF GUARDIAN —*Accounting by Executors.* The provisions of the statutes requiring guardians to account annually, and oftener if required by the probate courts, clearly refer to accounts to be rendered during the lifetime of the guardian and minority of the ward; but where the guardian dies before making a settlement, and long after his ward's majority, his executors, having received no assets of the ward, cannot be compelled by the probate court to make a settlement of the estate of the said ward. The guardianship has terminated, the probate court has lost its jurisdiction, and the presentation of such settlement is no part of the duties involved in the administration of the estate of the testator.

MEMORANDUM.— Error from Johnson district court; JOHN T. BURRIS, judge. Action in the probate court by John W. Calvert against John P. Harris, as executor of the estate of John Fulcher, deceased. Judgment for plaintiff, and defendant appealed to the district court. Judgment for plaintiff. Defendant brings the case to this court. Reversed. The opinion herein was filed February 14, 1896.

The statement of the case, as made by GILKESON, P. J., is as follows:

This action was originally commenced in the probate court of Johnson county by John W. Calvert, who, on the 1st day of December, 1890, filed his pe-

tition for a citation to issue to said John P. Harris, as executor of the estate of Fulcher, deceased, requiring him to appear and account to this court and to the said John W. Calvert for all moneys and credits of petitioner which might be found due to him from said late guardian.  Upon this there was issued by the probate court a citation requiring the said John P. Harris, executor, as aforesaid, to appear before the court on the 10th day of October, 1890, and render a final account of the guardianship of his testator, as guardian of the said John W. Calvert.  This citation was served upon Harris on the 29th day of September, 1890, by the deputy sheriff of Franklin county.  Harris did not appear as required, and on the 10th day of October, 1890, the probate court proceeded to and made a final settlement of the affairs of Fulcher, guardian, and rendered a judgment as follows :

"The court doth find that there is due John W. Calvert from the late John W. Fulcher the sum of $2,000, with interest from this date at the rate of 6 per cent. per annum, with which said sum it is ordered that the executor of John Fulcher stand charged, and that said John P. Harris pay the same over to the said John W. Calvert out of the funds belonging to said estate in his hands."

On October 14 John P. Harris applied for and was granted an appeal to the district court.  In the district court he filed an answer to the petition and citation consisting of : (1) General denial.  (2) Alleging that Fulcher, as guardian, had faithfully performed his duties as such, and duly and lawfully accounted for all moneys and property of every description belonging to Calvert which came into his hands, and that on the 2d of June, 1877, he made a settlement with the probate court of Johnson county, and that

the court approved the same ; that the probate court had full jurisdiction of the said cause and settlement, and was authorized to render the judgment that it did of approval ; that said judgment is and was in full force and effect (setting forth the settlement and judgment of the probate court), which shows that from January 1, 1865, to July 1874, the guardian received the sum of $927, and that up to July, 1874, he had expended for the benefit of the ward, Calvert, for boarding, clothing, schooling, etc., the sum of $927, and the court found that the amount of money ($927) was received by Fulcher as a pension due to Calvert's father between the dates last mentioned, and that since that time, up to the time of filing the settlement, in 1877, he had made no charge against the minor, and approved the account, allowed the charges against the estate of said minor as reasonable and just.   (3) Setting up that no cause of action has accrued in favor of Calvert within two years, or within three years, or within five years, from the commencement of these proceedings, and that Calvert attained his majority in the year 1879, and that since that time has not been under any legal disability.

To this answer Calvert replied by general denial. Trial had by the court; special findings of fact and conclusions of law were made, upon which judgment of the court was rendered as follows : That J. P. Harris, as executor of the estate of John Fulcher, account to and pay over to the said John W. Calvert the sum of $927, with interest at 6 per cent. per annum from July 11, 1874, and said executor pay costs of this proceeding, taxed at $165.35.   Harris, executor, brings case here for review.

The undisputed facts in this case are, that Calvert was born in Appanoose county, Iowa, on the 11th

day of July, 1858; that his father died in the year 1863, in the military service of the United States; that his mother was a daughter of John Fulcher, and died in 1864; that for a long time prior to the death of the mother the plaintiff, Calvert, and his mother, had resided with John Fulcher, in Iowa; that after the death of the mother the plaintiff, Calvert, continued up to 1876 to reside with John Fulcher, who was his grandfather; that in 1864, while they were residing in Iowa, Fulcher was appointed guardian of Calvert; that after their removal to Kansas Fulcher was, by the probate court of Johnson county, appointed guardian of the plaintiff, duly qualified and entered upon his duties as such guardian; that from January 1, 1865, to July, 1874, Fulcher, as guardian, received from the government of the United States pension money amounting to $927, belonging to his ward, the plaintiff; that on the 2d of June, 1879, Fulcher, as guardian, filed with the probate court of Johnson county an account of his guardianship; that said account was approved and allowed by the probate court of Johnson county; that on the 2d day of February, 1890, Fulcher died in Johnson county, Kansas, testate; that John P. Harris was, by the will of Fulcher, appointed executor; that he qualified, and was, at the commencement of this action, and still is, acting as such executor; that no contract was ever entered into between Fulcher (as guardian) and Calvert (as ward) with reference to the payment of wages by Fulcher, or for the payment of boarding, clothing or schooling by Calvert; nor did Calvert ever make any claim to his guardian for wages, or intimate to him that he intended charging him for his services, or object to the charges his guardian had made against him for schooling, boarding, etc., or

object to the account, or any item thereof, which his guardian had filed with the probate court after he had full knowledge thereof; that Calvert arrived at the age of majority on the 11th day of July, 1879; that within a very short time after arriving at age, and during the year 1879, he examined the records of the probate court of Johnson county, and became fully acquainted with the settlement made by his guardian in 1877, and consulted with attorneys at that time as to his right of recovery against his guardian for the very money he now asks that Harris, the executor, be required to account for; that he has not been under legal disability or incapacitated to assert his rights at any time since he arrived at the age of majority.

*I. O. Pickering*, for plaintiff in error.

*F. R. Ogg*, and *S. T. Seaton*, for defendant in error.

The opinion of the court was delivered by

GILKESON, P. J.: Two questions are presented for our consideration in this case: First. Had the probate court jurisdiction to cite the defendant below to make settlement of the accounts of his testator as guardian? Second. Is the action barred by the statute of limitations? The first we must answer in the negative, and the second in the affirmative.

The constitutional and statutory provisions in reference to the jurisdiction and power of probate courts and the statutes of Kansas governing guardians and wards are unlike those of most of the other states. Hence, we have received very little assistance from the briefs of counsel, except upon general propositions. There is no provision in the statutes of this state requiring guardians to make final settlements.

48—2 APP.

The only provision found therein is in paragraph
3236, General Statutes of 1889, and this refers only
to accounting. We cannot, as suggested by counsel,
take anything by implication or analogy by referring
to the act governing executors and administrators;
for the status of each is entirely different, and the ca-
pacity in which they act totally unlike. The former
have the interest of a single person, or class of per-
sons to look after, and are only responsible to them —
their trust is of a private, personal nature — while the
latter have in charge the interests not only of those
who are to receive the estate upon distribution, but
also the interests of the creditors of the deceased, and
act as the agents of both (even though their in-
terests conflict), and their trust is of a public char-
acter; a limit can be set upon the time in which
they may be required to do all acts pertaining to
their office, and the statutes provide for a final
settlement, viz., by notice to the world, and this is
eminently proper, for the public, so to speak (that is,
parties other than the distributees, who might be
termed privies), are interested therein. But none of
these conditions or reasons exist as to a guardian.
As we have said, he deals only with his ward or
wards; to them alone he is accountable. None but
they are interested in his accounts, and if they are
satisfactory to them no one can complain, not even
the probate court, and their settlement or accounting
can be made without the intervention of it. (*Tate v.
Stevenson*, 55 Mich. 320.) While it is true the statute
provides for and makes it the duty of guardians to
account annually, and oftener if the probate court
requires, it clearly has reference to accounts to be
rendered during the lifetime of the guardian and the
minority of the wards; for it would not for a moment

be claimed that the guardian could continue in office after the ward became of age, and include in his account, year after year, transactions had between him and his ward after the latter became of age ; for when that event happens the ward is *sui juris*, and any liability that would attach to either of them would arise out of the contractual relations, and would not be enforceable in the probate court, but in an action at law.   We can readily see, from reasons stated, why there is no provision made for a final settlement by a guardian, or, when the settlement becomes final, why public notice is not required.   It is unnecessary.

Another reason exists in this state : The probate court has not exclusive jurisdiction over these matters, and the ward is not remediless.   But suppose the guardian would, in making a settlement, mark it "Final" and publish a notice : Would it have any more weight or sanctity merely from the fact that notice was given, and the paper marked "Final" ? We think not.   And, should it receive the approval of the probate court, the guardian receive his discharge, the probate court be shorn of all its jurisdiction and control over both guardian and ward, this would not make it final, if there had been any fraud practiced.   The district court would still have jurisdiction to examine into it.   But if the theory advanced by the defendant in error is correct, it would be valid and binding without regard to how obtained, and the statute of limitations would at once begin to run in favor of the guardian without regard to the condition of the ward.   In many states, and particularly those from which decisions have been cited by defendant in error, the statute provides, or the condition of the bond is such, that guardians are required to make final settlements "when the ward arrives at age,"

and under such condition some (but not all) of these courts of last resort have held, "until the guardian does make this settlement the probate court has power to compel him so to do," on the theory that this is a condition precedent to his discharge; " and the trust continues until this requirement is complied with." We think this construction is correct under such statutes. We think that if the guardian should made a settlement with and to the entire satisfaction of the ward, while the court might not be empowered to change the settlement, yet it would undoubtedly have the power to compel the guardian to comply with the law, or fulfil the condition of his bond. It is also noticeable that in all states in which the rule contended for by the defendant in error obtains, the trust of guardianship is not a personal one, but goes to the executor. This is not so in this state. (Gen. Stat. 1889, ¶ 7168; *Collier v. Blake,* 14 Kan. 250.) And in those states where the rule obtains that probate courts have authority to cite the personal representatives of a guardian to make a final settlement, it is limited to cases where the guardian dies during his term of office. (9 Am. & Eng. Encyc. of Law, 148, and cases there cited.) And we have failed to find any authority that holds that such power exists in the probate court when the office terminated before the guardian's death; and in those states where the statute provides that he shall make a final settlement, to obtain it, when the office has terminated prior to his death, recourse has been had to the chancery courts.

The final account of a guardian is properly addressed to the court that has jurisdiction of the estate of the ward, when presented by the guardian; but when the guardian dies before making a settlement, and long

after his ward's majority, his executors have no authority to present his account to a court of probate, nor has such court jurisdiction over the matter. The settlement of the account can only be had in a court of equity by a proceeding against the executors and other necessary parties. (*In re Allgier*, 65 Cal. 228.) We concur with this view, yet under the statutes of California (§ 1754, Code Civ. Proc.) the guardian is required, and it is one of the conditions of his bond, "when his ward becomes of age, to exhibit to the probate court a final settlement." As we have stated, when the ward becomes of age the ward is *sui juris*, and any legal liability which arises between him and his former guardian after that does not arise out of their former relations, but out of the contractual relation established between them, not enforceable within the jurisdiction of the probate court, but the remedy or right is enforceable in an action at law. The presentation of such a settlement is no part of the duties involved in the administration of the estate of the testator. If the property which was under the control of the testator, as guardian, come into the hands of the executor, the guardianship, being a personal trust, did not pass to him on the death of the testator, and the property held by the guardian did not become assets in the hands of the executor or administrator to be administered. He merely holds it for its preservation until the person whose estate it is, and for whose benefit it is held, can establish a right thereto, obtain a settlement of the trust terminated by the death of the trustee, in the proper forum, where the rights of all parties to the trust may be definitely determined. These settlements must be presented to the probate court by a guardian, but upon his death he is no longer in office, or, if the ward has become of

age, the office has terminated, so the remedy is in the courts which retain jurisdiction after these things have happened, and must be sought in the proper forum.

This, then, brings us to the question, "When does the guardian's term of office expire?" This may occur in various ways. We will only notice two that are applicable to the case, viz. : (1) The death of the guardian. (2) The ward becoming of age. ( 9. Am. & Eng. Encyc. of Law, 95 ; 2 Kent's Com. 221–227 ; *Stroup v. The State,* 70 Ind. 495 ; *Overton v. Beavers,* 19 Ark. 625 ; *Tate v. Stevenson,* 55 Mich. 320 ; *The People v. Brooks,* 22 Ill. App. 594 ; *Glass v. Woolf, Adm'r,* 82 Ala. 281 ; *Rose v. Gill,* 4 Cal. 250 ; *In re Allgier,* 65 Cal. 228 ; *Klemp v. Winter,* 23 Kan. 699.)

In *Tate v. Stevenson,* supra, it is held :

"Guardianship . . . ends when the ward becomes of age. . . . The guardian then can do no farther act as such, but is discharged of his office, and his ward may settle with him if he chooses without the intervention of the probate court; . . . termination of the guardianship is equivalent to the discharge of the guardian."

We think this is the rule in Kansas, and is very strongly indicated in *Klemp v. Winter,* supra. For these reasons and upon authority, we think that the probate court has no power to cite the executor of a guardian to make final or any other kind of settlement, particularly after the guardianship has terminated. The remedy of the ward is by an action on the bond, or to compel an accounting, in a court having jurisdiction of such matters. Is his remedy affected by the statutes of limitation? The rule is well established in this state, that actions upon the bond of a guardian are barred within five years after the

cause of action shall have accrued, and within two years after the disability ( if any exists ) is removed. ( Code, § 18, subdiv. 5, and § 19 ; *Fletcher v. Wormington*, 24 Kan. 262 ; *Ryus v. Gruble*, 31 id. 767 ; *Scantlin v. Allison*, 32 id. 376.)

Actions occasioned by default or misconduct of the guardian are by suit upon his bond, and accrue as soon as it occurs. (*Bonham v. The People*, 102 Ill. 434 ; *State v. Salvin*, 95 Mo. 253.)

"Actions against sureties on the guardian's bond are barred in four years from the guardian's discharge, and this means four years after he ceases from any cause to be guardian, and the statute begins to run within two years after the ward arrives at age. That the ward has the right to compel an accounting will not be disputed, and this action is barred, and the statute begins to run within the same limit as to actions upon bond." (*Jones v. Jones*, 91 Ind. 378 ; *Tate v. Stevenson*, 55 Mich. 320 ; 9 Am. & Eng. Encyc. of Law, 148 ; *In re Van Derzee*, 80 N. Y. Sup. 532 ; *Glass v. Woolf, Adm'r*, 82 Ala. 281 ; *Bone's Appeal*, 27 Pa. St. 492 ; *Adam v. Reviers*, 59 Ga. 793.)

And in *Lenox v. Harrison*, 88 Mo. 491, while the court does not apply the statute of limitations, it holds :

" The subject of the favorable presumptions, which are indulged in behalf of persons acting in an official capacity, especially after a long lapse of time has intervened, has been quite extensively discussed in *Long v. J. M. & S. Co.*, 68 Mo. 422, . . . by this court. And equity views with disfavor suits that are brought after the death of the party whose estate is sought to be charged, where the fraud alleged is known before, and suit might have been brought during the lifetime of the party acquainted with the whole business, but without reason or excuse such suit is delayed until after his death. . . . ' Under such circumstances the laches must of itself be held fatal, for it would be

to assert a doctrine to the last degree hazardous to say that a complainant with full knowledge of all the facts on which he relies can lie quietly by until death comes to his assistance and puts the seal of perpetual silence on the lips of his adversary.'"

And this very properly applies to the case at bar. With full knowledge of all the facts, years have elapsed in which the defendant in error has remained silent, never claiming what he now seeks to obtain; not even intimating to his guardian (who, from the testimony, has been more than a father to him) that he intended making a charge against him for services; without reason or excuse for his inactivity and silence (except his cupidity and avarice) asks a court of justice to aid him in taking from those who from his infancy have been as sisters to him the small pittance they have remaining after sharing even this with him.    There is nothing in the demand that commends itself to the equity side of a court.

But it is contended that the guardian is a trustee of an express trust, and the statute of limitations does not run against such trustee.    We cannot concur with the counsel in this.

"An express trust assumes an intention of the parties to create that relation or position, and a direct act of the parties by which it is created in accordance with such intention, outside of the mere operation of the law."

In an express trust the parties intend such a relation between themselves, carry out their intention by suitable words, and the law confirms and accomplishes the object they had in view.    An express trust primarily assumes three parties — the one who by proper language creates or declares the trust; the second, who is the recipient of the authority thus conferred; and the third, for whose benefit the authority

is received and held. Trusts, in their strict and technical sense, are only known to equity, and, falling as they do in such a sense within the peculiar and exclusive jurisdiction of a court of equity, the doctrine has been long established, that so long as they subsist they cannot be reached, as between trustee and *cestui que trust*, by statute of limitations. But to exempt a trust from the bar of the statute it must be : (1) A direct trust ; (2) it must be of the kind that belongs exclusively to the jurisdiction of a court of equity ; and (3) the question must arise between the trustee and *cestui que trust*. (Angell, Lim. 166.) And we think the rule is, and has been from the earliest decisions, that trusts intended by courts of equity not to be reached or affected by the statute of limitations are those technically and continuing trusts which are not cognizable at law, but fall within the proper, peculiar and exclusive jurisdiction of this court. And this rule was laid down by Chancellor Kent in *Kane v. Bloodgood*, 7 Johns. Ch. 109, and has been ever since followed, and in commenting on this principle, the chancellor says :

"I cannot assent to the proposition that all cases of direct and express trust and arising between trustee and *cestui que trust* are to be withdrawn from the operation of the statute of limitations, notwithstanding a clear and certain remedy exists at law. The word trust is often used in a very broad and comprehensive sense. Every deposit is a direct trust. Every person who receives money to be paid to another, or to be applied to a particular purpose to which he does not apply it, is a trustee, and may be sued, either at law for money had and received, or in equity as a trustee for a breach of trust. The reciprocal rights and duties founded upon the various species of bailment and growing out of those relations, as between 'hirer and letter to hire, borrower and lender, depos-

itary and person depositing, a commissioner, and an employer, a receiver and giver of a pledge, are all cases of express and direct trust'; and these contracts, as Sir William Jones observes (Jones on Bailments, 2), are 'among the principal springs and wheels of civil society.' Are all such cases to be taken out of the statute of limitations under the notion of a trust, when one of the parties solicits his remedy in this court?''

The chancellor then proceeds to examine clearly, but fairly, all the authorities from the earliest that he could find (*Harrison v. Lucas*, 1 Ch. Rep. 67, 15 Car. 1) down to the case then before him, and shows that the distinction laid down by him could be traced through the whole of them, but that it was not so distinctly and clearly laid down until the opinion of Lord Macclesfield, in *Lockey v. Lockey*, (Finch's Prec. in Ch. 518,) in which he says that

"To remove a trust from operation of the statute, it must be such a trust, technically, as is created by the mutual confidence of the parties, such as equity alone can take cognizance of, and afford redress. If it is a trust that the law courts can give relief, the statute will run, although the party may have sought his remedy by a suit in chancery. In such cases, the fact of the suit being brought in a court of chancery will not defeat the statute. It can be avoided only by a technical trust, of which the courts of law could afford no relief. When it is laid down that, so long as a trust is continuing and subsisting, the statute does not commence to run between the *cestui que trust* or his assigns, and the trustee, the doctrine applies to such cases only as are strictly and technically trusts, created and sustained by the principles of equitable jurisprudence, exclusive of, and in contradistinction to trusts of common-law cognizance; and even in such cases the statute would commence to run from the time the trustee disavowed the trust, or did any act conclusively showing that he did not hold

as trustee. If the legal title is in one, in trust for another, the trust could not be enforced but by a resort to equitable jurisprudence. This would be a case where the trust would be a continued equitable trust. The statute would not run until he had clearly avowed that he did not hold as a trustee, but in adverse right to the trust claim. If one recovers into his possession the moneys or chattels of another it would create a trust; but suppose he goes further and write to the other that he had received his money : here would be a declaration of a direct trust, but not such a trust as would be unaffected by the statute of limitations, because suit could be brought in a court governed by the rules of common law. So every bailee is, in some sense, a trustee, but it does not follow that every kind of trust forms an exception to the operation of the statute of limitations. If so, half of the business transactions of men would be removed from its influence. It is important, therefore, in all cases of trust, in inquiring whether the statute can be pleaded, to bear this distinction in mind. If there is a remedy at law — that is, on the principles of common law in contradistinction to equity jurisprudence — the fact of there being such a remedy brings the trust within the statute." (*Wingate v. Wingate*, 11 Tex. 430.)

The judgment in this case will be reversed, and the cause remanded with instructions to render judgment herein for the defendant below, John P. Harris.

All the Judges concurring.