BERKIN, APPELLANT, *v.* MARSH ET AL., RESPONDENTS.

[Submitted April 6, 1896.   Decided April 13, 1896.]

GUARDIAN—*Limitation of action against sureties—Death of ward.*—The death of a ward is a discharge of the guardian within the meaning of section 404, of the Probate Practice act (1887), providing that an action against the sureties on a guardian's bond must be commenced within three years from the discharge or removal of the guardian.

SAME—*Action against sureties—Legal disability.*—A legal disability to sue pertains to the person desiring to sue and not to the cause of action, and therefore, though a cause of action on a guardian's bond may not accrue until after the guardian's final accounting, this does not place the administrator of a deceased ward under a disability from the time of the ward's death until the accounting, within section 404 of the Probate Practice act (1887), limiting actions against a guardian's sureties to three years from the discharge of the guardian, unless the person entitled to bring the action is under a legal disability to sue.

SAME—*Limitation of action against.*—The provision of section 404, Probate Practice act (1887) requiring action against the sureties on a guardian's bond to be brought within three years, is a special statute of limitations for the benefit of the sureties, and not for the principal.

*Appeal from Fifth Judicial District, Jefferson County.*

ACTION in guardian's bond.   Judgment was rendered for the defendants below by SHOWERS, J., on demurrer to the complaint.   Reversed in part.

Statement of the case by the justice delivering the opinion.

Plaintiff appeals from a judgment entered upon sustaining the defendant's demurrer to the complaint.   Plaintiff is administrator of the estate of Valentine Thuma, who was judicially declared to be dead on October 11, 1890, on which day plaintiff was appointed administrator of his estate.   Thuma, before his death, was insane, and the defendant Marsh was for many years his guardian.   Marsh made his final accounting on April 10, 1891, which was confirmed in court May 2, 1891. Upon the death of Thuma, and upon the accounting of Marsh it appeared that Marsh had assets in his hands, belonging to his former ward, amounting to $10,633.49.   He was directed by the court to pay this sum to the administrator, this plaintiff.   The complaint alleges all of these facts, and, furthermore, that there is still in the hands of Marsh, the former

guardian, the sum of $9,585.58. This action to recover this sum was commenced against Marsh and his sureties on March 8, 1894. The demurrer of all the defendants was upon the ground that the cause of action was barred by section 404 of the probate practice act, in force at the time these proceedings were had. The section reads as follows:

"Section 404. No action can be maintained against the sureties on any bond given by a guardian unless it be commenced within three years from the discharge or removal of the guardian; but if at the time of the discharge or removal of the guardian the person entitled to bring such action is under any legal disability to sue, the action may be commenced at any time within three years after such disability is removed."

From October 11, 1890, the date of the death of the ward and of the appointing of the administrator, the plaintiff, up to the time of the commencement of the action, more than three years elapsed. From May 2, 1891, the date of the guardian's accounting, up to the commencement of the action, less than three years elapsed. The action was against the guardian and the sureties on his bond. Both the guardian and the sureties joined in the demurrer to the complaint. The demurrer was sustained on the ground that the cause of action was barred by the statute of limitation found in section 404, *supra.*

*Cowan & Parker,* and *Thomas J. Galbraith,* for Appellant.

I. The statutes in question did not commence to run until after the rendering of, and adjudication upon, the guardian's final account, and no *discharge* in contemplation of law could have taken place until such time. (*Davis* v. *Drew,* 25 Am. Dec. 467; *Commonwealth* v. *Stub,* 51 Am. Dec. 515 and notes; *Commonwealth* v. *Moltz,* 51 Am. Dec. 499 and notes; *Irwin* v. *Backus,* 25 Cal. 214; *Graff* v. *Misoner,* 52 Cal. 636; *Allen* v. *Tiffany,* 53 Cal. 16; *Bisbee* v. *Gleason,* 32 N. W. 578, (Neb.); *Tudhope,* v. *Potts,* 51 N. W. 1110, (Mich.); *Bell* v. *Rudolph,* 12 So. 153, (Miss.); *Marlow* v. *Lacy,* 2 S.

W. 52, (Texas); 9 Am. & Eng. Ency. of Law, page 135, and cases cited in note 3; *Douglas* v. *Ferris*, 18 N. Y. S. 685; *Brandt on Suretyship*, § 491, 494; *Brodrib* v. *Brodrib*, 56 Cal. 563.)

II.   The plaintiff was under a legal disability to sue, pending the action or proceeding for accounting. (*Irwin* v. *Backus*, 25 Cal. 214; *Montgomery* v. *Hernandez*, 12 Wheaton 129, and cases cited; *Mattingly* v. *Boyd*, 20 Howard, 128; *Nell* v. *Commonwealth*, 7 A, 74; *North Star* v. *Strong*, 33 Minn. 1; *Bell's Appeal*, 115 Pa. St. 88; 9 Am. & Eng. Ency. of Law, 135 and notes; 13 Am. & Eng. Ency. of Law, 731 to 745 inclusive and note 4 on page 746, citing *Chicago* v. *Jenkins*, 103 Ill. 588 to 597; 24 Am. & Eng. Ency. of Law, 864.)

*Edward C. Russel*, for Respondents.

I.   The death of the ward makes guardianship of the ward no longer necessary, and it has been frequently held, that the office of the guardian, as to the property, after the death of the ward, was simply that of a custodian, with the one duty to turn over the assets at once to the person or persons entitled to receive them. (Lawson's Rights, Remedies and Practice, Vol. 11, 859. Schouler on Domestic Relations, 312; Am. & Eng. Enc. of Law, Vol. IX, page 96 and cases cited; *Kimball* v. *Perkins*, 130 Mass. 141; *Martin* v. *Tally*, 72 Ala. 23.)   The death of the ward is a more definite termination of the guardianship than the coming of age, which is universally held to be a termination of the guardianship. (*Henderson* v. *Henderson*, 54 Md., 343; *Green* v. *Johnson*, 2 Gill & J. 389; Angell on Limitations, § 178; *Williams* v. *McNaire*, 98 N. C. 334; *Hodges* v. *Council*, 86 N. C. 184; *Glass* v. *Wolf*, 3 So. (Ala.), 11.)

The death of the ward is a "discharge" of the guardian, from which time the statute begins to run. (*Loring* v. *Allen*, 9 Cush. 68; *McKimm* v. *Mann*, 141 Mass. 507; see also, *Probate Judge* v. *Stevenson*, 55 Mich. 320; *Hudson* v. *Bishop*, 32 Fed. 519; affirmed in 35 Fed. 820; *Probate Court* v. *Childs*, 51 Vt. 82.)

II. Apellant's claim that the administrator was under a legal disability to sue, is not tenable. These words, "legal disability," have a technical meaning when used in connection with statutes of limitation, and it has been frequently held, by the best authorities, that the statutory exceptions, expressly mentioned, are the only exceptions to such statutes which will be considered by the courts. (Wood on Limitations, § 252; *Chemical National Bank* v. *Kissane*, 32 Fed. 429; *Demarest* v. *Wyncoop*, 3 Johnson's Ch. 142; *Amy* v. *Watertown*, 120 U. S. 320; Angell on Limitations, 203; *McIver* v. *Rogan*, 2 Wheat. 25; *Fairbanks* v. *Long*, 91 Mo. 628; *Dozier* v. *Ellis*, 28 Miss. 730; *Rowell* v. *Patterson*, 76 Me. 196; *Bucklin* v. *Ford*, 5 Barb. 393.)

DE WITT, J. This is a special statute of limitations, applied to sureties upon a guardian's bond. (*Hudson* v. *Bishop*, 32 Fed. 519.) Appellant contends that the cause of action here attempted to be stated arose only upon the filing of the final report by the guardian, and its confirmation by the court. It is not necessary to express an opinion upon this question. It may be conceded for the purposes of this decision that the cause of action arose only upon the confirmation of the guardian's final report. Upon this question see *Chaquette* v. *Ortet*, 60 Cal. 594; *Hood* v. *Hood*, 85 N. Y. 561; *Marlow* v. *Lacy*, 68 Tex. 154, 2 S. W. 52; *Perkins* v. *Stimmell*, 114 N. Y. 359, 21 N. E. 729. But as above noted, this statute of limitations is a special one. The time does not, as in ordinary statutes of limitation, commence to run at the accruing of the cause of action. On the other hand it commences at the date of the discharge or removal of the guardian. In this respect the statute is specific. The inquiry, then, is, when was this guardian removed or discharged?

Upon a similar statute Chief Justice Shaw of Massachusetts said: "The defense relied on, by a surety on a guardianship bond to the judge of probate, is that it is barred by the statute of limitation. The provision in Rev. St. C. 79, § 26,

is, 'that no action shall be maintained against the sureties in any bond given by a guardian unless it be commenced within four years from the time within which this chapter shall take effect, or within four years from the time when the guardian shall be discharged,' with a proviso not material. The court are of opinion that by the term 'discharged,' in this statute, is intended any mode by which the guardianship is effectually determined and brought to a close, either by the removal, resignation or death of the guardian, the marriage of a female, the arrival of a minor ward to the age of twenty-one, or otherwise." (*Loring* v. *Alline*, 9 Cush. 68.)

This case was approved in *McKimm* v. *Mann*, 141 Mass. 507, 6 N. E. 740; in which the court said: "The ward's death effectually dissolves the relations of guardian and ward, and leaves upon the guardian the duty of a mere custodian of the property. He can no longer appear in court to defend a suit against the ward. (*Whitney* v. *Whitman*, 4 Mass. 508). In ordinary cases of agency, if the principal dies, the agency is determined by mere operation of law; and it will make no difference; even though the power is declared in express terms to be irrevocable. (*Marlett*, v. *Jackman*, 3 Allen, 278, 294; Story, Ag. § 488.) No reason is apparent why a guardian's power should survive the death of his ward. Like other agents whose authority has ceased, he must hold the property remaining in his hands until it can be delivered over, and must settle his accounts; but his guardianship is at an end. And we cannot doubt that the death of the ward is a discharge of the guardian, within the meaning of Pub. St. c. 139, § 28."

Upon a similar statute of Michigan, Judge Campbell said: "The question then arises, what is meant by the discharge of a guardian? It is claimed by the defense that it means the termination of his official character. For the plaintiff it is claimed that it means his discharge by final settlement. The only section of the statutes bearing on this question which have been called to our attention are Comp. Laws, sections 4816, 4836, (How. Ann. St., sections 6308. 6328.) The

former provides that every guardian shall have the care and management of the estate, and continue in office until the minor reaches majority, 'or until the guardian shall be discharged according to law.' The latter section provides for the resignation and removal of guardians, which can only be done during the minority of the ward, and while there is, therefore, a disability to sue. It has been the uniform understanding that the office itself terminates in all cases when the ward comes of age, or ceases to be incompetent, and after that time the ward may settle with his guardian without the intervention of the probate court if he chooses, and the guardian can do no further act as guardian; but becomes discharged of his office." (*Probate Judge* v. *Stevenson,* 55 Mich. 320).

Construing a similar statute in Wisconsin, Judge Shiras said: "The second question presented is whether it appears that the action is barred by the lapse of time. The express provision of section 3968 is that 'no action shall be maintained against the sureties on any bond given by a guardian unless it be commenced within four years from the time the guardian shall be discharged.' This is a special limitation for the benefit of sureties, and does not effect the right to recover from the guardian. The limitation begins to run 'from the time the guardian shall be discharged.' On part of plaintiffs it is argued that the guardian is not discharged until there has been a final accounting and settlement, and an order or judgment entered adjudging the amount due, from the guardian, and ordering its payment. This construction would make the words 'shall be discharged,' equivalent to the terms 'final settlement of accounts.' Practically this may be in the majority of instances, the time when the guardian is discharged. For instance, when the ward becomes of age, it is the duty of the guardian to settle his accounts, and turn over all property in his hands belonging to the ward. The fact that the ward comes of age does not, *ipso facto,* change the relation in which the guardian holds the property from that of a statutory trustee to that of a debtor. Holding the property of the

ward, he is bound to exercise proper care thereof, and his duty and obligations will continue until he has duly accounted for and delivered up possession of the property. But is this true in case of the death of the guardian before the ward comes of age? In such case the personal care and management of the property by the guardian is at an end. Are the sureties on the guardian's bond to be held liable for the acts or negligence of others than their principal? Is not the guardian discharged when, by any reason, he is relieved from any further control over the property of the ward? Such a discharge does not relieve from liability from all past acts; but is he not discharged from further liability by reason of the fact that his power to control is at an end? The death of the guardian ends, of course, all personal control over the property. His estate becomes liable for all sums found due to the wards. If it is ascertained that at the date of the death of the guardian a certain sum was in the hands of the guardian, belonging to the wards, and the same is not paid, the sureties on the bond may be liable therefor; but, under the statute, suit thereon must be brought within four years from the discharge of the guardian, and it seems to me that death is such a discharge." (*Hudson* v. *Bishop*, 33 Fed. 519.) This decision was affirmed by Judge Brewer in 35 Fed. 820.

*Harris* v. *Calvert*, 44 Pac. 25, is a very recent case from Kansas upon this subject, and cites numerous authorities to the same effect. Among other things, the court said in that case: "This, then, brings us to the question, 'When does the guardian's term of office expire?' This may occur in various ways. We will only notice two that are applicable to the case, viz: (1) the death of the guardian; (2) the ward becoming of age. (9 Am. & Eng. Ency. of Law, page 95; 2 Kent on Comm., 221-227; *Stroup* v. *State*, 70 Ind. 495; *Overton* v. *Beavers*, 19 Ark. 625; *Probate Judge* v. *Stevenson*, 55 Mich. 320, 21 N. W. 348; *People* v. *Brooks*, 22 Ill. App. 594; *Glass* v. *Woolf's Adm'r.*, 82 Ala. 281, 3 South. 11; *Ross* v. *Gill*, 4 Cal. 250; *In re Allgier*, 65, Cal. 228, 3 Pac. 849; *Klemp* v. *Winter*, 23 Kan. 699.) In *Probate Judge* v.

*Stevenson, supra,* it is held : 'Guardianship ends when the ward becomes of age. The guardian then can do no further act as such, but is discharged of his office, and his ward may settle with him, if he chooses, without the intervention of a probate court, and the termination of a guardianship is equivalent to the discharge of the guardian.' "

We are therefore of opinion that the death of the ward terminated the relations of guardian and ward. In this case the ward judicially died on October 11, 1890, and, as far as the relations between guardian and ward were concerned, the guardian was then discharged or removed. He ceased to be a guardian. He, however, was not discharged from liability to account for the property to the ward, or to the ward's estate. (*Harris* v. *Calvert* and *Hudson* v. *Bishop, supra.*) But, his office of guardian ceasing, he was thus discharged or removed within the meaning of the statute of limitations, contained in section 404, as construed in the cases above cited. Therefore the statute of limitations (§ 404, *supra*) in this case had run when the action was commenced, and the demurrer below was properly sustained, unless, in the language of section 404, "at the time of the discharge or removal of the guardian the person entitled to bring such action was under legal disability to sue." The question, therefore, is, was the plaintiff in this case under a legal disability to sue prior to the filing of the guardian's account and its confirmation ? Appellant claims that he was under such legal disability, for the reason that the cause of action had not yet arisen. We conceded above, for the purposes of this decision, that the cause of action did not accrue until the confirmation of the guardian's report. (See cases cited on this point above.) But is this a legal disability in the plaintiff ? We think that it is not. A legal disability to sue pertains to the person desiring to sue. This subject was discussed by Judge Sawyer in *Meeks* v. *Vassault,* in which case the court said :

"This being so, it is insisted by plaintiff's counsel that, since neither he nor his grantors, the heirs of Harlan, could maintain an action for the recovery of the lands in contro-

versy pending the administration, or until distributed by the probate court on November 6, 1869, they were under a legal disability to sue, within the meaning of section 191 of the probate act; and, the action having been brought within three years after the said distribution, that it is not barred. Section 191 is as follows : ‘The preceding section shall not apply to minors or others under any other legal disability to sue at the time when the right of action shall first accrue; but all such persons may commence such action at any time within three years after the removal of the disability.’ The question is, what is the meaning of the phrase, ‘any legal disability to sue,’ as here used ? This provision does not define the term ‘legal disability.’ It assumes that there are other disabilities known to the law, and we must go to the law as it existed outside of this section to ascertain what they are. The provision mentions ‘minors,’ and adds, ‘or others under any legal disability.’ Upon turning to the general statute of limitations, we find specified as disabilities, infancy, insanity, imprisonment for criminal offenses, coverture, etc., but neither in that nor in any other statute is anything of the kind now claimed as a disability named or recognized as such. The definition of ‘disability’ as given by Bouvier, is, ‘The want of legal capacity to do a thing.’ (Bouvier's Law Dictionary.) The disability may relate to the power to contract or to bring suits, and may arise out of want of sufficient understanding, as idiocy, lunacy, infancy or want of freedom of will, as in the case of married women and persons under duress; or out of the policy of the law, as alienage when the alien is an enemy, outlawry, attainder, *præmunire*, and the like. The disability is something pertaining to the person of the party,—a personal incapacity,—and not to the cause of action, or his relation to it. There must be a present right of action in the person, but some want of capacity to sue. In this case there was no want of power or capacity in the person. The difficulty is in his relation to the subject-matter of the suit.'' (*Meeks* v. *Vassault*, 3 Sawy. 206.)

We may turn to our own statute, as did Judge Sawyer to

that of California, and ascertain what are generally legal disabilities to sue.    Section 39, Code of Civil Procedure, provides as follows :    '' Section 39.    If a person entitled to commence an action for the recovery of real property, or for the recovery of possession thereof, or to make any entry or defense founded on the title to real property, or to rents or services out of the same, be at the time such title descends or accrues, either, first, within the age of majority; or, second, insane; or, third, imprisoned, on a criminal charge, or in execution upon conviction, of a criminal offense for a term less than for life; or, fourth, a married woman, and her husband be a necessary party with her in commencing such action or making such entry or defense.''

We notice the following definitions of '' disability '' in law dictionaries :

'' Disability :  The want of legal ability or capacity to exercise legal rights either special or ordinary, or to do certain acts with proper legal effect, or to enjoy certain privileges or powers of free action.    At the present day disability is generally used to indicate an incapacity for the full enjoyment of ordinary legal rights; thus married women, persons under age, insane persons, and felons convict are said to be under disability.    Sometimes the term is used in a more limited sense, as when it signifies an impediment to marriage, or the restraints placed upon clergymen by reason of their spiritual avocations.    Disability is either general or special; the former when it incapacitates the person for the performance of any legal acts of a general class, or giving to them their ordinary legal effect: the latter when it debars him from one specific act.''    (Black Law Dict.)

''Disability:  The absence of legal ability to do certain acts or enjoy certain benefits; such as the disability to sue, take lands by descent, to enter into contracts, to alien property, etc.

''Section 3:  As a rule, 'disability' means a general disability, especially a disability to sue.    (Co. Litt. 128a.)    Disabilities of this kind are of importance with reference to the statutes

of limitation and relating to adverse possession, (*q. v.*) which allow persons under certain disabilities an extended time within which to enforce their right.    (Stats. 3 and 4 Wm. IV. c. 27, § 16 includes 'absence beyond seas,' (*q. v.*) in the list of disabilities, although it is strictly speaking, only a disadvantage or 'impediment,' as Stats. 21 Jac. I. c. 16, § 4, rightly calls it.''    (Rap. & L. Law Dict.)

''Disability: Incapacity for action under the law; incapacity to do a legal act.    A personal incapacity, and may relate to powers to contract or to sue, and arise from want of sufficient understanding, as in cases of lunacy and infancy; or for want of freedom of will, as in cases of coverture and duress; or from the policy of the law, as in cases of alienage, outlawry, and the like.''    (And. Law Dict.)

The accruing of the cause of action is not personal to the plaintiff proposing to sue.    It is not a disability on his part. If it be objected that we are thus holding that the statute of limitations commences to run before the cause of action arises, the answer is simply that this statute of limitations is different from the ordinary ones, and specifically provides that which is unusual, viz: that the limitation shall commence at the discharge or removal of the guardian, and not at the time of the accruing of the cause of action.    The matter was treated in the Michigan case above cited, (*Probate Judge* v. *Stevenson*, 55 Mich. 320, 21 N. W 348,) in which the court said:    ''There is, therefore, no hindrance in the way of seeking an accounting, and a guardian is bound to be ready to account as soon as his trust comes to an end.    The remedy to compel accounting is summary, and it cannot generally consume much time.    And inasmuch as a failure to account is as much a breach of duty as a failure to pay over money, the cases cannot be very numerous in which a recourse to the bond cannot be had within the statutory period.    The discharge cannot very well have more than one of two meanings.    It must mean either the end of the guardianship office, or the discharge from liability. It cannot mean the latter, because that would preclude any occasion for resort to the bond.    The object of the statute

was evidently, to make a uniform rule of limitation; and it is long enough to prevent injustice in both cases, if not universally.''

If it should be held, when occasion arose, that the cause of action did not accrue until the filing and confirmation of the guardian's final report, still the period of limitation would be very little reduced, for the reason that the accounting of the guardian could be compelled within a very short time, and after such accounting and confirmation ample time would remain within the period of limitation, in which to commence the action after the same had accrued. In any event, this is a question of positive statutory law, and a matter in which the legislature has exercised its discretion in making this provision.

We are therefore of the opinion that the demurrer was properly sustained as to all these defendants who were sureties on the guardian's bond. But the provision of this statute (section 404) is a limitation for the benefit of the sureties, and not the principal. (*Hudson* v. *Bishop*, 32 Fed. 915.) Section 404 would not bar the action as against the principal, the defendant Marsh. The demurrer did not plead that the action was barred as to Marsh, although counsel signed the demurrer for Marsh and the sureties. There was, therefore, nothing in the demurrer for which it should have been sustained as to Marsh. The judgment in favor of all defendants except Marsh will be affirmed. As to Marsh the case is remanded, with directions to set aside the judgment in his favor and overrule the demurrer.

*Reversed in part.*

PEMBERTON, C. J., and HUNT, J., concur.