[No. 2446. Decided January 19, 1898.]

LUCY L. WICKHAM, *Respondent,* v. OTIS SPRAGUE *et. al.,*
*Executors, Appellants.*

GUARDIAN AND WARD — ACTION FOR ACCOUNTING — STALE CLAIM —
CONSTRUCTIVE NOTICE OF FRAUD — RUNNING OF STATUTE OF LIMI-
TATIONS.

A claim by a ward that her guardian had appropriated the pro-
ceeds of a sale of her lands some forty years before and had
never made any accounting to her therefor, constitutes too stale
a demand for her to enforce against her guardian's estate by ac-
tion brought thirty years after she arrived of age, and after she
had knowledge of facts at the date of her majority which should
have put her on inquiry as to her rights.

After a ward becomes of age she stands in the relation of a
creditor of her guardian, and where she has knowledge after ma-
jority sufficient to put her on inquiry as to whether her guardian
has appropriated a portion of her property, her right of action
against him for fraud would accrue from the date of such knowl-
edge, and, under Code Proc., § 115 (Bal. Code, § 4800), would be
barred if not prosecuted within three years thereafter.

Appeal from Superior Court, Pierce County.—Hon.
JOHN C. STALLCUP, Judge. Reversed.

*P. Tillinghast,* for appellants.

*Bogle & Richardson,* for respondent.

The opinion of the court was delivered by

SCOTT, C. J.—The plaintiff, in March, 1895, brought
this action against the executors of her father's estate for an
accounting. She was the only child of her parents John
W. and Lucy Sprague, and was born in March, 1844. Her
mother died in May of said year, leaving an estate consist-
ing of several tracts of land containing about 500 acres situ-
ated in Erie county, Ohio, which under the laws of that
state descended to the plaintiff subject to a life estate in her

father as tenant by courtesy. On October 2, 1852, her
father was appointed her guardian by the probate court of
Erie county. On the 13th of said month he filed a petition
in said court reciting her ownership of a certain twenty-five
acres of land by inheritance from her mother subject to his
life estate, that said tract was in an uncultivated condition
and that the rents and profits of it were not sufficient to
pay the taxes annually assessed thereon, and that it would
be to the greater advantage of the plaintiff to have her
interest in said lands sold and the proceeds thereof either
put out at interest or applied to the improvement of other
of her lands; and an order of sale was entered on this peti-
tion. On April 8, 1853, the tract was sold at public auc-
tion for $750, a report thereof made by the guardian, and
on June 13, 1853, the sale was approved by the court.

Her father died at Tacoma in this state on December 24,
1893. The records of the probate court aforesaid fail to
show a settlement of his guardianship or what was done
with the proceeds of said land, and this action was brought
to recover the full purchase price of said tract with inter-
est at six per cent. per annum computable with annual
rests from the time of the sale, which would now amount to
many thousand dollars; the contention being that under
the laws of the state of Ohio it was his duty to invest said
moneys for her benefit by loaning the same at interest up-
on certain kinds of security specified. The court found that
the value of the tract in question at the time of her father's
death was $1,500 and decreed a recovery for that sum with
interest thereon from that time. Each side has appealed
from the decree, the plaintiff contending that she was enti-
tled to recover the amount claimed by her with interest
as stated and the defendants contending that she should not
recover at all, and in any event could recover no more than
was allowed by the court. The defendants' first contention

will be first considered. In its ninth and tenth findings, the lower court found in substance that the plaintiff did not, until some time in the year 1894, know that her father had ever been appointed her guardian or that she had owned, or that he had sold, the tract in question; that he had concealed said matters from her and had appropriated the $750 to his own use; and that she had not been guilty of any laches or lack of diligence in failing to discover such fraud earlier, having been kept by him in ignorance of all facts that could have led her to a discovery of the truth.

There was introduced in evidence a deed executed by the plaintiff to her father in October, 1865, and also a deed from her father to her executed on the same day, whereby it seems she conveyed to him her interest in a part of the lands so inherited by her and he conveyed to her his interest in the remainder unsold. The particular tract in controversy which he had previously sold as aforesaid was not described or referred to in either deed.

A third deed was introduced which was executed by her father and his second wife to her on the 25th day of June, 1881, conveying all their right, title and interest in and to the land theretofore deeded by the plaintiff to her father, except a certain eighty acres, which had been sold meanwhile, and the consideration paid to her by him.

The conveyances made in October, 1865, were after the plaintiff had attained her majority, and one of the contentions of the defendants is that these transactions, as well as the later conveyance in 1881, were sufficient to put the plaintiff upon inquiry as to her once having owned the tract now in controversy and of its having been disposed of by her father. The plaintiff contends that as she got no part of said property through the probate court she was not called upon to examine the records of that court, and consequently should not be charged with knowledge of her

father's guardianship and his sale of the tract in question. But the plaintiff must have known, or must be charged with the knowledge, that she got this land by inheritance from her mother's estate. She knew that she owned several tracts of land in Erie county, and there is no pretense that it came from any other source either by gift or purchase. The general public records of that county showed that her mother owned all of this land including the tract in controversy which she had inherited from her father, the plaintiff's grandfather; that her mother had a one-fifth interest in the lands left by her grandfather, and that the same had been partitioned between the five children; so that these tracts inherited by the plaintiff from her mother had been allotted to her mother but a few months before her death. She must have known that this land which she was deeding to her father, and that in which he was deeding his interest to her, came to her as aforesaid, and the same public records which furnished evidence of her mother's title to the several tracts also furnished evidence of her mother's ownership, at the time of her death, of the tract in controversy. After attaining her majority she must be charged with a knowledge of the laws of the state of Ohio as she was residing there at the time upon a part of the other lands, and continued to reside there for many years, in Erie county, in the vicinity of the tract in question, then in the possession of the purchaser or his grantee, and to have known that by the laws of said state the real estate owned by her mother descended to her subject to a life estate in her father. Conceding that she was not called upon to examine the records of the probate court, would not ordinary diligence have required her to examine the general public records in order that she might ascertain what property she had in fact inherited from her mother as well as to have made such discovery nearly thirty years later. If so, while

her father could have conveyed his life estate in the twenty-five acres to another and such purchaser's possession would not have been adverse to her during her father's life, the fact that this twenty-five acres was omitted from their respective deeds when it seems they had dealings in relation to all the other lands would have been a pertinent subject of inquiry. There is an utter absence of proof tending to show any intentional concealment upon the part of her father of the fact of his guardianship and the sale of the tract in controversy. On the contrary, it appears that the most friendly relations always existed between them, that she lived with her father until she was married in 1866 and that he gave her several sums of money thereafter, one amount being $6,000, in the year 1889, and that he left her $15,000 by his will. It also appears that the value of the tract in controversy was inconsiderable compared with the value of the other property inherited by her, and with that she obtained from her father by gift, and if he never informed her of the fact that he had sold this tract or of what disposition he had made of the proceeds, considering the circumstances, it must have been due entirely to inadvertence on his part, which might well have happened in view of the lapse of time, and its small value. At the time the land was sold she was of such tender years as to be incapable of appreciating or understanding business matters; there was no occasion to say anything about it to her at that time, and it might easily have been forgotten by him before she became old enough to understand it. We are of the opinion that as the plaintiff knew after she became of age that she owned several large tracts of land, and must have known that she inherited this land from her mother, as she could not have supposed that she obtained it from any other source under the circumstances, the fact of her knowledge of her ownership as evidenced by the

deeds aforesaid executed in 1865 was sufficient to have put her upon inquiry, and with ordinary diligence she could have ascertained that she also inherited the tract in controversy. The claim sought to be enforced in this action, brought thirty years after the execution of the deeds aforesaid, is one of a kind not often sustained unless there has been an actual fraudulent concealment of the facts from the party claiming. It is one of those stale claims occasionally sought to be enforced, where it is insisted that the facts were unknown during the life time of one of the parties in interest, but which are usually discovered soon after the death of such party. They are not looked upon with favor and the right to recover must be clearly established. *Godden v. Kimmell*, 99 U. S. 201; *McQuiddy v. Ware*, 20 Wall. 14; *Heath v. Elliott*, 83 Iowa, 357 (49 N. W. 984); 16 Am. & Eng. Enc. Law, p. 790; *Wood v. Carpenter*, 101 U. S. 135; *Badger v. Badger*, 2 Wall. 87.

We also think her claim became a legal demand in March, 1865, when she became of age, and section 115 of the code (Bal. Code, § 4800), in enumerating actions which may be commenced within three years, provides:

" 4. An action for relief upon the ground of fraud, the cause of action in such case not to be deemed to have accrued until the discovery by the aggrieved party of the facts constituting the fraud."

It is conceded by her that any knowledge or notice sufficient to put her upon inquiry would be sufficient to charge her with actual knowledge of the fraud and we think she had such knowledge as stated. After a ward becomes of age he stands in the relation of a creditor to his guardian, and if he fails to bring suit within the time limited by statute the suit is barred. *Humphreys v. Mattoon*, 43 Iowa, 556; *State, ex rel. Coleman v. Willi*, 46 Mo. 236; *Spicer v. Hockman*, 72 Ind. 120; *Jones v. Jones*, 91 Ind. 378; *Harris v. Calvert*, 2 Kan. App. 749 (44 Pac. 25).

A number of other points have been argued by the defendants relating to the overruling of the demurrer to the complaint, presumptions of payment of the amount received for the land, and of settlements with her at the time of the execution of the deeds aforesaid, which, under the conclusion we have reached, do not require consideration.

Reversed and remanded with an order to dismiss the action.

DUNBAR, ANDERS, GORDON and REAVIS, JJ., concur.