Allen E. Goble et al. v. Edward W. Simeral et al.

Filed January 21, 1903. No. 12,526.

Commissioner's opinion, Department No. 2.

1. **Statute Adopted from Another State.** If a statute adopted from another state had been construed by the courts of that state prior to its adoption here, the same construction should be given ordinarily in this state in the absence of any indication of a contrary intention on the part of the legislature.

2. **Construction of Statute:** Reluctance of Courts: Legislative Intent. The reluctance of courts to construe a statute so as to permit it to operate harshly in particular cases, must yield to plain and unequivocal indications of legislative intent.

3. **Guardian:** Ward: Minority: Discharge Ipso Facto. A guardian is discharged, within the purview of section 32, chapter 34, Compiled Statutes, (Annotated Statutes, 5402), when the ward becomes of age.

4. **Statute of Limitations.** As to the sureties upon the guardian's bond, the period of limitation provided in said section begins to run from the date of such discharge, not from the time when a cause of action has accrued upon final settlement. If no cause of action accrues within the period fixed, by reason of failure to take or complete the necessary steps, the sureties do not continue to be liable.

Error from the district court for Douglas county. Action upon guardian's bond. Plea of statute of limitations. Tried below before Baxter, J. Judgment for defendants. *Affirmed.*

*L. D. Holmes, J. J. Boucher, Herbert S. Crane, Thomas D. Crane* and *O. S. Erwin,* for plaintiffs in error.

*Edward W. Simeral,* for himself, *Charles J. Greene, Ralph W. Breckenridge* and *J. C. Kinsler,* with him.

Pound, C.

Section 32, chapter 34, Compiled Statutes (Annotated Statutes, sec. 5402), provides that "no action shall be maintained against the sureties in any bond given by the guardian unless it be commenced within four years

Syllabus by court; catch-words by editor.

from the time when the guardian shall have been discharged." The question involved in this case is whether an action may be maintained against the sureties more than four years after the ward comes of age, in case the amount due from the guardian is not ascertained upon final settlement of his accounts until such period has expired. We think the question must be answered in the negative.

It appears that the statutory provision under consideration originated in Massachusetts. Afterwards it was adopted by Michigan. Thence it passed to Wisconsin, and from Wisconsin it came to Nebraska. This history is sufficiently clear from inspection of the several statutes themselves, but has been carefully worked out by the supreme court of Wisconsin in *Paine v. Jones,* 93 Wis., 70, 67 N. W. Rep., 31. The court say (p. 74) : "The statute seems to have originated, or been first adopted in this country, in the state of Massachusetts, where it is first found in the Revised Statutes of 1836,* * * * since which time, without material change, it has continued a part of the law of that state. Michigan adopted substantially the same statute from Massachusetts. *Campau v. Gillett,* 1 Mich., 416, 53 Am. Dec., 73, Revised Statutes, 1838, pt. 2, tit. 7, ch. 5, sec. 25. And without material change it has since continued to be the law of that state. It was adopted by this state from Michigan in 1849." But long before the statute was taken over in Nebraska, the courts of Massachusetts had construed it in *Loring v. Alline,* 9 Cush. [Mass.], 68, and the construction adopted in Massachusetts has been followed since in Michigan and Wisconsin. It is a general canon of construction that if a statute adopted from another state had been construed by the courts of that state prior to its adoption here, the same construction should be given ordinarily in this state. *Coffield v. State,* 44 Nebr., 417; *Forrester v. Kearney Nat. Bank,* 49 Nebr., 655; *Parks v. State,* 20 Nebr., 515; *O'Dea v. Washington County,* 3 Nebr., 118. This rule has not always been fol-

*Chapter 79, sec. 36.

lowed, however, and has been modified to some extent in recent cases.

In *Nebraska Loan & Building Ass'n v. Marshall,* 51 Nebr., 534, the court declined to apply the general rule because of another provision in the statutes which indicated a different intention on the part of the legislature, and because the courts of the state from which the statute had been taken had since altered their opinion as to its construction.

Also, in *Morgan v. State,* 51 Nebr., 672, it was held that the prior construction had no more force than would be allowed to a previous decision of this court construing the statute, and hence might be rejected for reasons which would require such course had the decision been rendered here originally.

In *Rhea v. State,* 63 Nebr., 461, this proposition was somewhat restricted, and alteration of the statute by subsequent amendment, as to a point on which the prior construction largely rested, was held to afford ground for independent interpretation.

In view of these later decisions, we think the rule may be formulated thus: Ordinarily the adopted statute should be construed here as the courts of the state from which it was taken had construed it prior to its adoption, in the absence of any indication of a contrary intention on the part of the legislature. The decisions in Michigan and Wisconsin were subsequent to our adoption of the statute here in question, and have persuasive authority only. *Myers v. McGavock,* 39 Nebr., 843, 42 Am. St. Rep., 627. For these reasons, it may be proper to treat the question as in some measure a new one, and to indicate the considerations which move us to adopt the construction given by the courts of Massachusetts.

In *Loring v. Alline, supra,* the court said (p. 70) : "By the term 'discharged,' in this statute, is intended any mode by which the guardianship is effectually determined and brought to a close, either by the removal, resignation, or death of the guardian, the marriage of a female guardian,

the arrival of a minor ward to the age of twenty-one, or otherwise." This construction is followed in *Probate Judge v. Stevenson,* 55 Mich., 320, 21 N. W. Rep., 348; *Paine v. Jones,* 93 Wis., 70, 76, 67 N. W. Rep., 31; *Berkin v. Marsh,* 18 Mont., 152, 44 Pac. Rep., 528, 56 Am. St. Rep., 565, and in effect in *Harris v. Calvert,* 2 Kan. App.; 749, 44 Pac. Rep., 25. The objection urged against it by counsel is that, in effect, the former ward may be barred of his action before he is able to maintain it; that if the settlement or final accounting for any reason is delayed or protracted beyond four years, there is no remedy against the sureties. But we think the purpose of the statute was to require the accounts to be settled, so far as the sureties were to be held, with reasonable expedition and within the prescribed period. Undoubtedly, as a general proposition, courts will be loth to construe a statute so as to deprive a person of a cause of action by limitation before he is in a position to assert it. The ordinary statutes of limitations provide for this by dating the limitation from accrual of the cause of action. But here the provision is special, meant to cover a special case, and governed by special considerations.

As the court said in *Hudson v. Bishop,* 32 Fed. Rep., 519, 521, construing the statute of Wisconsin: "This is a special limitation for the benefit of the sureties, and does not affect the right to recover from the guardian. The limitation begins to run 'from the time the guardian shall be discharged.'" The purpose is "to fix a time certain, for the benefit of the sureties, so that they may know definitely when their obligations as sureties will terminate." *Paine v. Jones, supra.* No other meaning can be given to the language used. As the court say in the case just cited (p. 76): "To say the term 'discharged' is synonymous with 'settlement of the guardian's account with the proper court, or with the ward,' would seem to do violence to the language used. * * * We are unable to see wherein a mere settlement of the guardian's account, without actual compliance with the order of the court, operates as a discharge, in any sense."

In *Probate Judge v. Stevenson, supra,* the court say (p. 323) : "The 'discharge' can not very well have more than one of two meanings. It must mean either the end of the guardianship office, or the discharge from liability. It can not mean the latter, because that would preclude any occasion for resort to the bond." Hence courts generally hold, under statutes like our own, that the purpose of the legislature was to require the amount due from the guardian to be ascertained and suit to be brought therefor within the period fixed, and that, as the time allowed is reasonable, negligence or other cause of delay in settling the account can not extend it. As the court said in *McKim v. Mann,* 141 Mass., 507, 509, 6 N. E. Rep., 740 : "If no right of action has accrued within the four years for want of necessary preliminary steps, that is the fault or the misfortune of those interested in the estate." It has been remarked in some of the cases cited that this construction may sometimes work a hardship in particular cases. But the reluctance of courts to construe a statute so as to permit it to operate harshly in particular cases must yield to plain and unequivocal indications of legislative intent. *State v. Moore,* 45 Nebr., 12; *Morrill v. Taylor,* 6 Nebr., 236. Statutes of limitations running from some specified act or event and not from the accrual of plaintiff's cause of action, are not uncommon; and where such is clearly the legislative intent, the plaintiff is bound to complete the requisite preliminaries and bring his action in the time required. *First Nat. Bank of Garretsville v. Greene,* 64 Ia., 445, 17 N. W. Rep., 86, 20 N. W. Rep., 754. We are therefore of opinion that a guardian is discharged, within the purview of section 32, chapter 34, Compiled Statutes (Annotated Statutes, sec. 5402), when the ward becomes of age, and that as to the sureties upon the guardian's bond, the period of limitation provided in said section begins to run from the date of such discharge, not from the time when a cause of action has accrued upon final settlement. Such is the express language used, and such is the construction given to like

statutes elsewhere. *McKim v. Mann,* 141 Mass., 507, 6 N. E. Rep., 740; *Probate Judge v. Stevenson,* 55 Mich., 320, 21 N. W. Rep., 348; *Paine v. Jones,* 93 Wis., 70, 76, 67 N. W. Rep., 31; *Berkin v. Marsh,* 18 Mont., 152, 44 Pac. Rep., 528, 56 Am. St. Rep., 565. As the court say in *Berkin v. Marsh* (p. 162) : "If it be objected that we are thus holding that the statute of limitations commences to run before the cause of action arises, the answer is simply that this statute of limitations is different from the ordinary ones, and specifically provides that which is unusual, viz. : that the limitation shall commence at the discharge or removal of the guardian, and not at the time of the accruing of the cause of action." It follows that if no cause of action accrues within the period fixed, by reason of failure to take or complete the necessary steps, the sureties do not continue to be liable. The hardship involved is apparent, rather than real. It can happen but rarely that a guardian's accounts can not be settled finally within four years from his discharge. The order of the county court stands as a judgment, as against the guardian, and is directly enforceable. *Lydick v. Chaney,* 64 Nebr., 288. If the guardian takes the cause to the district court, he must give an appeal bond; and he can not suspend enforcement of a judgment of the latter tribunal by going to the supreme court unless he gives a supersedeas bond. Should the delay involved operate to relieve the sureties on the original undertaking, the ward is not left without a remedy so long as these bonds remain for his protection. In the absence of such appeals, there is nothing to prevent final ascertainment of the amount due long before the statute has run.

We recommend that the judgment be affirmed.

BARNES and OLDHAM, CC., concur.

By the Court: For the reasons stated in the foregoing opinion, the judgment of the district court is

AFFIRMED.

NOTE.—*Rule That by Adopting a Statute the Legislature Adopts Whatever Construction Has Been Placed Thereon by the Highest Tribunal of the State from Which It Was Taken, and This Whether the Language of the Two Statutes Be Identical or Synonymous.*—*Daily v. Swope,* 47 Miss., 367; Sutherland, Statutory Construction, 256; *Hess v. Pegg,* 7 Nev., 23. March 28, 1864, Lyman Trumbull reported, as chairman of the judiciary committee of the United States senate, the thirteenth amendment proposing the abolition of slavery.* It was the language of the ordinance of 1787 for the government of the Northwest Territory. Mr. Sumner had argued for the language of the French constitution, *equality before the law.* Jacob Merritt Howard, of Michigan, pointed out the advantage of adopting the language of the ordinance, for the reason, among others, that the ordinance had received judicial interpretation and the French constitution had not. Congressional Globe, March 29 to April 8, 1864. The reasons for the rule set out at the head of this note, are most cogent and the effect of the rule is most salutary. The legislature, in borrowing a statute or constitutional provision, is presumed to have adopted the construction with the language. The effect is to minimize litigation in the state of the adoption. See a different rule laid down by Hemphill, J., in *Snoddy v. Cage,* 5 Tex., 106, but note the vigorous dissent by Wheeler, J., at page 115.—W. F. B.