## SOUTHERN SURETY CO. v. BEAL.

No. 18836. Opinion Filed Nov. 27, 1928.

Allen, Underwood & Smith, for plaintiff in error.

W. F. Semple, for defendant in error.

BRANSON, C. J. The appeal herein is from the district court of Bryan county. Cora Ethel Beal sued the Southern Surety Company, a corporation, prevailed, and the defendant appeals. By reason of minority and the ownership of property, several years prior to 1920, one Crummey had, by order of the county court of Bryan county in probate, been appointed guardian of the plaintiff. As such, he received and held certain money and property of the plaintiff, his ward. The ward became of age May 1, 1920. The guardian filed his final report in the said court in December, 1920. The record is in dispute as to whether this report was approved or disapproved by the court.

The instant suit was filed July 23, 1926. It prayed judgment against the defendant in the sum of $500, an amount alleged to have been due. On March 26, 1926, the county court found this amount due from the guardian to the ward. Judgment was entered by the district court. The guardian having sometime prior to the bringing of the instant suit removed from the state, on notice to the guardian by publication, the county court entered an order March 26, 1926, finding that the guardian was liable to his said former ward in the said sum of $500. On this finding of the county court, the liability of the defendant on the bond of the guardian is predicated.

On the trial of the case in the district court, it was stipulated that no demand had been made by the plaintiff on her former guardian for the money sued for; that she had lived continuously in Bryan county up to the commencement of the action, and during such time she was an intelligent and competent person.

The defendant interposed the statute of limitations and laches in its answer. The evidence having been offered by the plaintiff, a demurrer thereto was interposed, which was by the trial court overruled. The trial court thereby held against the defendant on its plea of the statute of limitations and laches.

The limitation statutes pleaded by the defendant are section 1495, C. O. S. 1921, and subdivision 5 of section 185, C .O. S. 1921.

Section 1495 is as follows:

"Action on Bond. No action can be maintained against the sureties on any bond given by a guardian, unless it be commenced within three years from the discharge or removal of the guardian; but if at the time of such discharge the person entitled to bring such action is under any legal disability to sue, the action may be commenced at any time within three years after such disability is removed."

Subdivision 5 of section 185, C. O. S. 1921, is as follows:

"Fifth. An action upon the official bond or undertaking of an executor, administrator, guardian, sheriff or any other officer, or upon the bond or undertaking given in attachment, injunction, arrest or in any case whatever required by the statute, can only be brought within five years after the cause of action shall have accrued."

The defendant first contends that section 1495 barred the recovery sought by the plaintiff, on the principle that when the ward arrived at majority, he was "discharged" within the meaning of that term as used in the said section, and cites in support thereof numerous cases. 28 C. J. 1309, section 528, and cases therein cited; Brandes v. Carpenter, 68 Minn. 388, 71 N. W. 402; Paine v. Jones, 93 Wis. 70, 67 N. W. 31, and cases there cited; Perkins v. Cheney, 114 Mich. 567, 72 N. W. 595; Goble v. Simeral, 67 Neb. 276, 93 N. W. 235; Berkin v. Marsh, 18 Mont. 152, 44 Pac. 528; Westcott v. Upham et al., 127 Wis. 590, 107 N. W. 2.

While this court, in the case of Title Guaranty & Surety Co. v. Cowen, 71 Okla. 301, 177 Pac. 563, in referring to the case of Brewer v. Perryman, 62 Okla. 176, 162 Pac. 791, did so with the comment that perhaps the contention based upon the authorities above quoted made the rule announced in Brewer v. Perryman fall without the weight of authority, yet the rule therein announced has heretofore been adhered to by this court, and we do not deem it necessary in reaching the correct conclusion in this case to pass upon the question as to whether or not the guardian became "discharged" in the sense in which that word is used in the said section 1495, upon reaching majority. We therefore pass over this contention.

It seems that the exact question here has never been before this court in any reported case. As we view it, it can only be reached by a determination of what the statutes of the state on the appointment of a guardian, etc., as correlated, mean in the light of the authorities.

Section 1431, C. O. S. 1921, provides for the appointment of a guardian by the county court.

Section 6586, C. O. S. 1921, gives the guardian appointed power over the person and property of the ward, and section 6588 requires the guardian to keep the property of the ward safely, and deliver the same to the ward "at the close of his guardianship," etc. Section 6592, subdivision 2, provides:

"The power of the guardian appointed by the court is suspended only, first, by order of the court, and second, if the appointment was made solely because of the ward's minority, by his obtaining majority."

Section 6593, C. O. S. 1921, provides:

"After a ward has come to his majority, he may settle accounts with his guardian, and give him a release, which is valid if obtained fairly, and without undue influence."

Section 6594, C. O. S. 1921:

"A guardian appointed by a court is not entitled to his discharge until one year after his ward's majority."

From these sections, we cannot deduce otherwise than that the guardian is entitled to the custody of the property of the ward, and that the power to hold the property of the ward continues until the ward reaches his majority, and thereupon, under said section 6592, the properties and moneys due the ward are entitled to be paid over to the minor, and the power of the guardian to retain the same is suspended or terminated. The guardian may settle with his ward, and be released from further liability, but, with the view of giving the ward an opportunity to examine into the conduct of the guardian, the guardian is not entitled to a discharge from the court, under said section 6594, until one year after the ward's majority.

Bearing these provisions of the statute in mind, and the fact that in the instant case liability is sought to be fixed upon the guardian's bond, we find that by reason of section 1443, C. O. S. 1921, and subdivision 3 thereof—the bond is conditioned "to render an account on oath of the property, estate and moneys of the ward in his hands, and all proceeds or interest derived therefrom, and of the management and disposition of the same, within three months after his appointment, and at such other times as the court directs; and at the expiration of his trust, to settle his accounts with the county judge, or with the ward, if he be of full age, or his legal representatives, and to pay over and deliver all the estate, moneys and effects remaining in his hands, or due from him on such settlement to the person who is lawfully entitled thereto."

It must be noted that subdivision 5 of section 185 is a statute of limitation against an action upon the official bond of a guardian, and asserts that such "action * * * can only be brought within five years after the cause of action shall have accrued." This statute evidently does not mean "the cause of action" accrued at the same time the limitation began to run under the said section 1495, to wit, from the "discharge" of the guardian. The question then arises, under the said sections of the statute, when did the 5-year statute of limitations begin to run? The statutes above quoted make it clear that the power of the guardian to retain money of the ward terminated on the ward's majority. The moneys and properties were then due to be delivered to him by the guardian, and if not delivered, the ward had a right of action, being sui juris, against the guardian, and that continued, under the said subdivision 5 of section 185, for a period of 5 years.

In the instant case, the ward had a right to demand and receive from the guardian any moneys and properties alleged to be due after she became of age, and upon failure to deliver the same, she had a cause of action against the guardian for the recovery of the same, and it was at that time that the said statute of limitations given as subdivision 5 of section 185 began to run, and not the 3-year statute, as defendant first contends in the instant case. At the expiration of the said 5-year period, there could be no recovery against the surety on the bond, where this statute of limitations was interposed. While there are different statutes in the various states, by analogy we think the following authorities support our conclusion herein: 28 C. J. 1310, sec. 529; Brandes v. Carpenter, 68 Minn. 388, 71 N. W. 402; Finnell v. O'Neal, 13 Bush (Ky.) 176; Anderson-Oliver v. U. S. F. & G. Co. (N. C.) 93 S. E. 948; Self v. Shugart (N. C.) 47 S. E. 484; Williams v. McNair, 98 N. C. 332, 4 S. E. 131.

In the case of State v. Henderson, 54 Md. 332, that court points out that:

"The moment the ward is emancipated from the authority of his guardian, by reaching the age prescribed by law, his cause of action is complete, and the statute of limitations begins to run.' * * * The reason assigned for this is that instantly on his arriving at age, 'he is emancipated from the control of the guardian, and the trust

ceases to be a subsisting trust by its own limitation.' * * * From the moment the ward reaches the age when the law makes him free, what the guardian owes the ward becomes a debt for which he may immediately sue. All money due him and property belonging to him are from that moment legally demandable, and he may sue the guardian on his bond for its payment and delivery. The right of action being then 'complete,' the statute begins to run from that time. So soon as the ward arrives at age, the guardian is bound to pass his final account and pay over. * * * It was the guardian's duty to pass that account then, and his failure to do it was a breach of duty for which he was liable to suit at once. So long as he delayed, it was not a new breach, but a continuing default and a continuing breach."

That the failure of the county court to require an accounting, or the guardian to file his report or to settle with the ward. as provided by the statutes hereinabove quoted, can work the tolling of the statute of limitations, is not to be found in any decision to which our attention has been called. The duty of the guardian to the ward, the power of the guardian over the funds of the ward, ceases when the ward arrives at majority, and the moment the ward becomes sui juris, he is entitled as a matter of law to the funds theretofore held by his guardian as much as the maker of a promissory note is due to pay the note at its maturity, and the ward can enforce h's rights against his guardian, and in default of the guardian to comply with his statutory obligation, the sureties on his bond are liable for such breach. If the statute of five years does not begin to run at that time by the failure of the guardian or the county court to act, the liability on the bond could be extended for an indefinite number of years. If this were not the law, the statute of limitations hereinabove quoted could never be invoked by sureties on a guardian's bond, and the statute would afford no protection to sureties. Long after the time of the duty of the guardian to pay the moneys to his ward had arrived, to wit, the majority of the ward, the guardian might, by his whim or caprice. file a report, whether correct or incorrect, and should the court sustain the report, then the sureties on the guardian's bond would be liable, under the contention here made. Glazier v. Heneybuss, 19 Okla. 316, 91 Pac. 872; Ackerman v. Hilpert (Iowa) 79 N. W. 90.

In the case of Magruder v. Goodwyn's Adm'r et al. (Va.) 2 Patton and Heath, 561, that court said:

"Whenever the relation of guardian and ward terminates, it is right that the ward should not only have the power to call his guardian to account in a court of equity, but in order to avoid multiplicity of suits, he should have the right to join his sureties, who are responsible in the action, in case of the guardian's inability to satisfy the decree that may be rendered in the cause."

And therein it was held that the right of action on the part of the ward as against his guardian accrued immediately upon his arriving at the age of majority.

We think in the instant case, not only from the clear import and meaning of the statutes hereinabove quoted, but from the authorities, that there must have been contemplated by the Legislature that there should be a time at which the statute of limitations of five years should begin to run. That time is not the same time as mentioned in the previous statute of three years. In the previous statute, it runs from the discharge or removal of the guardian. The courts are not in unison as to just what is meant as to the word "discharge" or removal of the guardian, but it certainly means something other than the period from which the 5-year limitations begins to run, and just what it means is unnecessary to pass upon in this case, although it is briefed. We hold that, under the 5-year statute of limitations, section 185, subdivision 3, C. O. S. 1921, the amount due from the guardian to the ward was payable on the arriving at majority of the ward, and the ward's right of action against his sureties under the said statute upon the guardian's bond was barred after the lapse of five years from that date.

Judgment of the district court is reversed, with directions to dismiss the cause.

MASON. V. C. J., and HARRISON, LESTER, RILEY, and HEFNER, JJ. concur.

PHELPS, J., absent and not participating.

HUNT, J., not participating.