YOUNG v. YOUNG, GUARDIAN.

4-6206                                147 S. W. 2d 736

Opinion delivered February 17, 1941.

*C. T. Carpenter*, for appellant.

*John S. Mosby* and *Coleman & Fraley*, for appellee.

GRIFFIN SMITH, C. J. A policy of life insurance was payable half to the wife of the insured and a fourth to each of two sons, Lester and Martin, who were minors when their father died. The appellant, Lester Young, was nearly eleven years of age when the insurance became payable in 1926. Dave Young (another son of the

insured) was appointed guardian of Lester and collected as Lester's interest in the insurance $314.37. It is not contended that Dave contributed personally to Lester's support, or that any of the insurance money was expended for necessary purposes;. nor was the guardianship account ever stated to the court, or a settlement made.

March 17, 1939, Lester petitioned the Poinsett probate court for an order requiring an accounting.[1] September 7, 1939, there was a motion for judgment, the contention being that Dave had collected $400 belonging to his ward. H. T. Bonds and Jess Bonds were mentioned as sureties on the guardian's bond. The prayer was for judgment for $400 with 6 per cent. interest from March 26, 1926, a total of $650.[2]

October 11, 1939, Dave Young and H. T. Bonds moved to vacate the judgment, alleging (1) that the ward's action was barred by limitation; (2) that after the citation was served "Lester voluntarily gave assurances the matter was being dropped, and that by reason of this conversation he (Dave) dismissed the subject from mind"; (3) that only $200 was collected on Lester's account; (4) that in the exercise of due care the guardian deposited this money in First National Bank of Lepanto, and through failure of the bank the money was lost; and (5) that Lester Young is *non compos mentis,* and therefore could not maintain the action.[3]

---

[1] Although the petition refers to Dave Young as guardian, a citation issued May 1, 1939, is directed to Van Young. June 19, 1939, another citation was issued, properly directed to Dave Young. It was served June 23, 1939. There is no indorsement of service on the citation directed to Van Young.

[2] The court's indorsement is: "Heard on petition and other evidence. [It is found that the guardian] is indebted to Lester Young, his ward, in the sum of $650 to this date. Judgment [against guardian and his sureties on the bond] for said sum. Execution ordered." In a formal order of September 7 a principal debt of $360 was recited, with interest of $290. There is the further recital that the cause was heard on the petition of Dave Young to be appointed guardian, the guardian's bond signed by J. N. Bonds and H. T. Bonds, sureties; the motion of Lester Young to require the guardian to file his first and final settlement, the citation issued by the court requiring the guardian to settle, and the return of the sheriff thereon. There is no reference to "other evidence."

[3] The allegation that Lester was of unsound mind seems to have been abandoned. [This, perhaps, on the theory that it would be inconsistent with assignment No. 2, wherein it was alleged by Dave

On the motion to vacate, Dave Young testified that he collected $628.73 for Martin and Lester Young, but paid attorney John W. Scoby $50 for making the collection. Lester's part was deposited in First National Bank of Lepanto "as guardian." Witness made his personal deposits in this bank and also deposited partnership funds of Young Brothers. After the bank failed dividends aggregating twelve per cent. were paid and retained by the guardian.[4] There was objection to Young's testimony relating to his relations with the bank.

The court set aside the former judgment, but rendered judgment against Young and his bondsmen for $65.49, with interest at six per cent. from date.

Was the action barred by limitation? It is insisted that § 8939 of Pope's Digest is applicable.[5] It is conceded that the citation was not issued within three years from the time Lester became of age. The statute of limitation does not begin to run in favor of a guardian until his discharge. *Connelly* v. *Weatherly,* 33 Ark. 658. We think the court had jurisdiction to render judgment on the citation, although the amount is shown to have been erroneous. That an excess amount was adjudged to Lester is due to the action of appellees in not answering the citation, unless answer was excused by the conduct of appellant in assuring his brother the proceeding would not be pressed. While in the motion to vacate there is an allegation that Lester did make statements he did not intend to press the suit, Dave did not testify that any representations were made, or mention a conversation to the effect alleged in the motion.

that he relied upon Lester's promise not to prosecute the suit, or upon the statement that it would be dropped.]

[4] The witness gave the following additional testimony: "I do not have any record or deposit slip showing this deposit. I have moved three times since then and the children got into my papers and they have all been lost or destroyed. I had my attorney, John S. Mosby, try to locate the old bank records. He took [the matter] up with the federal court and other sources, and learned that the receiver, Mr. Hodges, was dead, and that the old records could not be located. It has been about thirteen years since the bank failed."

[5] If any person entitled to bring an action under the law of this state be, at the time of the accrual of the cause of action, under 21 years of age, . . . such person shall be at liberty to bring such action within three years after full age. . . ."

There is no evidence that fraud was practiced on the court or that Dave Young was deceived by his brother regarding prosecution of the suit, but this becomes unimportant in view of the fact that the judgment was set aside.

The amount collected for the ward was $314.37, and the check was deposited promptly after its receipt early in June, 1926. The bank failed "in April or May, 1927."[6] The money had then been in the hands of the guardian almost a year. No report of the loss was made to the probate court. There was no acknowledgment of dividends amounting to 12. per cent., or any other sum, although in his testimony the guardian conceded such dividends had been collected. For more than thirteen years the law requiring annual settlements was disregarded. Even now the only evidence that the ward's money was deposited in the bank is the guardian's recollection of what occurred more than a decade ago.

Amendment No. 24 to our Constitution provides that "the regular terms of the courts of probate shall be held at such times as is now or may hereafter be prescribed by law."

Section 2 of act 3, approved January 18, 1939, abolishes terms of probate courts as they formerly existed and makes them co-extensive with those of chancery courts. It also provides that "the various chancery courts of the state shall be open at all times, and may be in session in two or more counties on the same day, and the chancellor of any circuit may hear and determine all probate matters, in any county in which he may be sitting, for any county in his circuit."

Terms of chancery court in Poinsett county begin on the first Monday in May and December of each year. (Act 216, approved April 24, 1911; Pope's Digest, § 2798, p. 972). Although probate courts are presided over by the chancellor, they continue to be courts of law.

In the instant case the motion to vacate was made before the May term of Poinsett chancery court had been

---

[6] Records of the Federal Reserve bank show that the First National Bank of Lepanto closed by order of the board of directors March 4, 1927.

superseded by the December term, and the order setting the judgment aside was not void for want of jurisdiction.

Merits of the controversy, however, were fully developed. It is conclusively shown that Dave Young had not accounted to his ward or explained to the court. On the contrary he seems to have treated his administration as a closed incident when the bank closed. A timely report to the court, made when the bank's records were available to show how the transaction was handled, might have exonerated appellant; but in the circumstances here reflected we think there should be judgment for the amount received, with interest from the date the guardian's first settlement was due.

Inasmuch as total benefits collected on account of the death of the insured amounted to $1,257.47, and in view of appellant Young's testimony that he paid an attorney's fee of $50, the probate judge should determine what part of the fee is apportionable to the item of $314.37 and allow credit for the necessary expense of this nature.

The judgment is reversed, and the cause is remanded with directions to proceed in a manner not inconsistent with this opinion.