In the Matter of EVA D. W. GATTEAU, Petitioner, to Compel CHARLES S. WALLS, SR., Respondent, to Render His Account as Guardian of EVA D. WALLS, An Infant.

FIDELITY & DEPOSIT COMPANY OF MARYLAND, Respondent.

Surrogate's Court, Nassau County, September 29, 1942.

*Sylvanus D. Ward* for Charles S. Walls, Sr., respondent.

*Oscar R. U. del Giudice* for petitioner.

*Thomas E. White* for Fidelity & Deposit Company of Maryland, respondent.

HOWELL, S. The petition alleges that, on August 17, 1928, this court issued letters of guardianship of the person and property of the petitioner to the respondent, Charles S. Walls, Sr., who qualified as general guardian and filed his bond as such; and that more than thirteen years have elapsed since such appointment, that the petitioner is now over twenty-one years of age and that the respondent has not filed and settled his account as such guardian. The relief sought is an order requiring the respondent and his surety to file and judicially settle such account.

The respondent and the surety have both answered, setting up both the six- and the ten-year Statute of Limitations as a defense. They allege that the petitioner was born April 2, 1910, and became twenty-one years of age April 2, 1931, at which time the guardianship terminated and any right of action by the petitioner against the guardian and his surety accrued at that time; that no proceedings have been taken to compel an account and that, consequently, the present proceeding is barred both by the six-year Statute and by the ten-year Statute of Limitations.

The question of law presented at this time for determination is whether such defenses, or either of them, are valid. The petitioner asserts that they are not, and that the Court of Appeals has definitely determined that, under such circumstances, neither statute has run. (*Matter of Camp,* 126 N. Y. 377.)

When a general guardian is appointed by the Surrogate, his term of office expires when the infant attains the age of twenty-one years. (Surrogate's Ct. Act, § 179.)

It is the duty of a general guardian, when his ward attains full age, to deliver the corpus of the estate to the ward and to answer to the ward by an accounting for the issues and profits. (Domestic Relations Law, § 83.)

A judicial settlement of the accounts of a guardian may be compelled where the ward has attained the age of twenty-one years or has died, or where letters have been revoked or the guardianship powers have ceased. (Surrogate's Ct. Act, §§ 258, 259.)

A guardian may account voluntarily in a case where a petition for a compulsory accounting may be presented and in a case,

also, where the guardian has properly used and expended all of the infant's estate and the circumstances are such that, in the Surrogate's discretion, he should be discharged. (Surrogate's Ct. Act, § 261.)

In *Matter of Camp* (*supra*) the respondent's wife was the owner of certain real property, proceedings to condemn which, under the power of eminent domain, had been instituted by the city. Before the award was made, she died intestate leaving, as her heirs at law and next of kin, her husband, the respondent, and four children, one of whom was the petitioner. An award was made in the sum of $26,000, which award, standing in place of the land, descended, in equal parts, to the four children, so that one fourth thereof belonged to the petitioner, subject, however, to the respondent's life estate by the curtesy. No order was made with respect to the payment of the award into court or otherwise so as to differentiate between the life estate and the remainders. On the contrary, the respondent was appointed general guardian of the four children and the award was paid to and received by him, not as an individual but as such general guardian, on February 18, 1868. Apparently, he never attempted to account, and it was not until May 16, 1888, that the petitioner, who never knew about the award or his right to any portion thereof until about a year previous thereto, filed a petition in the Surrogate's Court of Kings County for a compulsory accounting. The answer of the guardian set up the Statute of Limitations by asserting that the guardianship ceased in 1872 when the petitioner attained his majority. The Surrogate overruled the defense and directed the respondent to account. Upon appeal, the General Term affirmed the Surrogate and again directed the respondent to account. In purported obedience to the order, he filed an account which, however, was fragmentary and most unsatisfactory. Objections thereto were filed and the account and the objections were then sent by the Surrogate to a referee who surcharged the respondent with the full amount received by him as guardian. When the case reached the Court of Appeals, it was briefed and argued by Mr. William C. Beecher, for the appellant, and by Mr. Joseph H. Choate, for the respondent. The opinion was written by Judge Peckham for a unanimous court.

The Court of Appeals pointed out that the land for which the award had been made, having belonged to the respondent's wife, passed to the four children subject to the respondent's estate by the curtesy therein and that, consequently, the respondent was entitled to the life use of the property and, hence, was

entitled to the life use of the award standing in lieu of the real estate. In the absence of proof requiring him to give security for keeping the award, the respondent was entitled to possession of the fund so long as he should live as well as the income and interest therefrom. Therefore, when he received the award in his capacity as guardian, he took it subject to his right as an individual to the use of it and to the income from it so long as he should live. It necessarily followed that when the petitioner became of age, he did not have the right either to possession of the fund or to any of the income therefrom and, consequently, when he became of age, no right to demand possession of either then accrued. Therefore, he was entitled, at the most, when he became of age, to an accounting and was not entitled to demand payment of the corpus or any part thereof or of the interest thereon. It necessarily follows that, as the guardian was still alive at the time of the proceeding and was protected by a bond, as guardian, there was proper security for the ultimate payment of the corpus, when he should die, to the petitioner. Therefore, until the death of the respondent, the petitioner had no right to demand either principal or interest of the fund, possession of which was rightfully in the respondent and the income from which belonged to him so long as he should live.

The proof established, however, that the respondent had used the fund, had lost it entirely and might well be regarded as insolvent. Nevertheless, neither the Surrogate nor the referee appointed by the Surrogate had any power, without the respondent's consent, to compute the then value of his life estate and to fix a gross sum in lieu thereof by deducting which the amount payable to the petitioner could be determined.

Referring, then, to the defense of Statute of Limitations, the court pointed out that the respondent's contention was that the relationship of guardian and ward is not a trust relationship, that there cannot be a guardian for a person who has become of age, and that, consequently, from the moment the petitioner attained his majority, his only right was to call the guardian to account, which right would run out if not exercised within ten years. In support of that contention, the respondent cited *Matter of Hawley* (104 N. Y. 250). The court, in the case now under discussion, however, referring to the *Hawley* case, pointed out that the actual decision therein was merely that a testamentary guardian is not a trustee within the meaning of the statutes relating to accountings by testamentary trustees; and that, in the course of its decision, the court, by Judge RAPALLO, said that, although every guardian is, in a general sense, a trustee because

he deals with property of another confided to his care, nevertheless, he is not a trustee as that word is ordinarily used in the statutes and in courts of equity. In other words, the court, in the *Hawley* case, recognized the trust relationship between guardian and ward but held that the guardian, nevertheless, was not strictly a " trustee " as defined by the statutes and courts of equity. The court, in the *Camp* case, however, held that the distinction was not important in the situation presented because the respondent had obtained possession of the fund as a guardian and, hence, dealt with it not alone, as life tenant, but, also, as property of another confided to his care; and said (pp. 389, 390) : " In this sense he occupies the position of a trustee so far as to prevent the running of any Statute of Limitation in his favor regarding the property entrusted to him. Although he may cease to be guardian upon the ward coming of age, yet so long as the property remains in his possession as guardian and unaccounted for, he must remain liable to account. This is no hardship upon the guardian, nor can it be the means of sustaining stale claims against him as such. The moment the ward arrives of age he may cite the guardian to account, and now by the Code of Civil Procedure (§ 2849, following the provisions of the Revised Statutes, vol. 2, p. 152, § 12), the guardian may, in any case where a petition for an accounting may be presented by any other person, present one in his own behalf, and an accounting may then be had. Thus either party may claim an accounting the moment the ward attains his majority."

The Court of Appeals, therefore, in that case, reversed the General Term and the Surrogate, holding that the petitioner was not entitled to the corpus and, hence, was not entitled to a surcharge against the respondent but that he was, however, entitled to an accounting after which the question might be presented of his right to resort to a court of equity.

I do not think that the *Camp* case, therefore, is decisive upon the question of law presented in the instant case. In the *Camp* case, the respondent was entitled to possession of the fund, not only as guardian but as an individual because of his life tenancy; he was, therefore, entitled to such possession and to the income therefrom so long as he should live. Therefore, during the period of his life, the petitioner would have no cause of action against him either for principal or for interest and, therefore, no Statute of Limitations would be running To be sure, the petitioner's right to demand an accounting would accrue when he became of age but could not be cut off by lapse of time because it would continue to exist so long as the respondent retained

possession of the fund rightfully, which, of course, he would do so long as he lived. I feel, therefore, that much that was said in the *Camp* case about the Statute of Limitations is really dictum. It is, nevertheless, important dictum because of the eminence of counsel representing the litigants and the eminence of the court which made the decision.

Tracing the history of the *Camp* case, it will be found that Surrogate RANSOM took a similar stand with respect to it in *Matter of Barker* (4 Misc. 40). In that case, the mother had been appointed general guardian in 1869 for her daughter who became of age in 1881. The latter filed a petition for an accounting in 1891, just six days before the expiration of ten years from the date she attained her majority. The question presented was whether the six-year Statute of Limitations or the ten-year Statute would apply. Referring to the earlier cases, the learned Surrogate pointed out that the principle established by them was that where two remedies existed, one legal and one equitable, the same Statute of Limitations should apply and that, usually, the six-year Statute was applied in such a situation. The Surrogate remarked that he was not satisfied that the *Camp* case (*supra*) was decisive on the question of the relationship between guardian and ward being such as to make any Statute of Limitations inapplicable. However, he could, and he did, decide the case before him upon another point entirely. The proof showed that more than six years before the proceeding for a compulsory accounting was instituted, the mother and daughter had had a conversation in which the mother had told the daughter that she had expended the entire fund. The Surrogate held that this was equivalent to a repudiation by the mother of the trust relation and that, consequently, the six-year Statute then started running, and, as six years had expired since that time, the proceeding was dismissed. It follows, therefore, that the *Barker* case, although referring to the remarks in the *Camp* case as dictum, did not, in fact, hold anything to the contrary but was decided upon the proposition of repudiation of the trust relationship by the guardian.

On the other hand, when the action is at law on implied contract for money had and received, it has been held in the Second Department that the six-year Statute of Limitations is applicable. (*Constantine* v. *Constantine,* 91 App. Div. 607; *Libby* v. *Van Derzee,* 80 App. Div. 494, affd. 176 N. Y. 591.) The action in the *Constantine* case was at law against the executor to recover moneys alleged to have been collected by the executor and which

belonged to the plaintiff. There was no demand for an accounting but merely a demand for a money judgment. The court, by WOODWARD, J., held that the action was one at law and that the six-year Statute of Limitations was applicable. He cited the Libby case (supra), which likewise was an action at law against an executor whose decedent had been the plaintiff's general guardian. The complaint alleged that he received money, as guardian, on January 13, 1864, and died January 22, 1892 without having accounted, and that the money passed into the hands of his executor, the defendant; that the plaintiff became of age in January, 1885, and that he had never received any of the money and, in fact, knew nothing about it until about three months before he instituted the action. The court, by HIRSCH-BERG, J., held that the decision in Matter of Van Derzee (73 Hun, 532) was directly in point. That was an application by one of the decedent's wards to compel the decedent's executor to account, and it was held that the right was barred six years after the ward became of age because, at that time, the relationship of guardian and ward ceased and became a relationship of debtor and creditor only, so that the right of action was one of implied contract which was an action at law and was barred at the expiration of six years from the time the cause of action arose.

In Matter of Lewis (36 Misc. 741), Surrogate DEVENDORF of Herkimer County, without citing or referring to Matter of Camp (supra), apparently proceeded upon the assumption that some Statute of Limitations commenced to run when the ward attained his majority, and considered whether it was the six- or ten-year Statute. In that case, the general guardian had been appointed in 1865 and never filed an inventory or account. The ward came of age in 1878. The guardian died in 1887 and his executor was appointed in 1888. The former ward did not institute proceedings to compel an accounting until more than twenty years later, i. e., in 1901. The Surrogate said, citing Matter of Rogers (153 N. Y. 316) and Matter of Boylan (25 Misc. 281), that if the proceeding were an action by next of kin to recover a distributive share, the cause of action would be a legal one and the six-year Statute would apply; but, as it was a proceeding to compel an accounting, it was equitable in its nature and the ten-year Statute applied, and began to run as soon as the ward became of age when his right to demand an accounting accrued. However, the Surrogate also found that the proof adduced established a presumption of payment to the ward and that the trust had been fully executed and no longer existed. Thus,

even if the principle stated in the *Camp* case (*supra*) were there applicable, *i. e.*, that even after the ward's maturity — there continued to be at least a constructive trust by reason of continued holding by the former guardian of funds belonging to the former ward — nevertheless, the finding by the Surrogate with respect to execution of the trust and payment to the ward might be found to be equivalent to a termination of the trust by such an affirmative act of the former guardian as would set the statute running.

Thus, in *Trustees of Mission Church* v. *Ridley* (167 App. Div. 392), the question was whether the plaintiff had merely a cause of action at law, or whether a constructive trust resulted cognizable in equity. In that case, a grantor, having a right of action against an elevated railroad company for damages for trespass and also another cause of action in equity for an injunction which might result in the payment of money as compensation for easements taken, conveyed to a grantee by deed which reserved " all claims for damages " against the railroad company. The grantee later sued to enjoin the railroad company, and the latter settled by payment of a sum of money, to recover which the grantor, more than ten years later, sued the grantee, and the latter was directed to account. The Appellate Division, First Department, by a majority, reversed, holding that the reservation in the deed was only of damages recoverable in a legal action for trespass so that the six-year Statute would apply, and that, in any event, the ten-year Statute had run since the grantee's receipt of the money at which time plaintiff's cause of action arose. Mr. Justice McLAUGHLIN, dissenting, wrote for affirmance on the ground that when the grantee received the money a constructive trust resulted and the ten-year Statute did not begin to run until the plaintiff obtained knowledge of the payment, which was within the ten-year period. From the authorities cited by Mr. Justice McLAUGHLIN (*Matter of Camp, supra; Matter of Meyer*, 98 App. Div. 7, affd. 181 N. Y. 553; *Matter of Ashheim*, 111 App. Div. 176, affd. 185 N. Y. 609), it would seem that he might have rested his decision upon the principle of the existence of a constructive trust which would continue, without the statute running, so long as the grantee held the fund without accounting, or payment, or some act sufficient to constitute a termination or repudiation of the trust with notice thereof to the *cestui*.

Thus, we find, from the above authorities, the three classes of cases noted by Surrogate WINGATE in *Matter of Deitz* (134 Misc. 393). There, the petitioner was a claimant against an

estate. He filed his claim with the executrix. She rejected it October 4, 1921, and died five years later without accounting. The claimant did not apply for a compulsory accounting, but, two years after the executrix' death, appeared and objected to the account of the deceased's executor. The Surrogate held that there was no trust relationship and that, therefore, the six-year Statute applied. The learned Surrogate then classified the cases as follows:

(1) Cases holding that mere lapse of time, however great, will not bar the right to an accounting without a further showing, as in proceedings brought by persons having a vested interest in the estate against the personal representative of a deceased executor who had been *either an express trustee* or a *person against whom a constructive trust was spelled out,* and to whom the usual trust principle is applied, namely, that no Statute of Limitations will begin to run in favor of the trustee against the *cestui*: (a) until *express repudiation* of the trust relationship has been brought home to the *cestui* or (b) until the *trust has expired by limitation.* Thus, *Matter of Irvin* (68 App. Div. 158) was an action against an executor holding an estate in trust, and it was there held that *so long as by affirmative acts he acknowledged that he was holding the entire estate in trust,* the statute did not run against the right to compel an accounting. (Citing *Matter of Camp, supra.*)

*Matter of Meyer* (*supra*), was a proceeding to compel an executor to account, and it was held that the executor holds a trust relationship toward testator's children, taking under the will, and that the right to compel an accounting does not start the statute running until the executor has, by some sufficient act, repudiated his liability. Hence, the fact that thirteen years elapsed is not alone sufficient. It must be also establishesd that there was repudiation, and lapse of time thereafter continuing beyond the statutory period.

In *Matter of Asheim* (*supra*), an executor in possession of trust funds failed to turn them over to the trustee. It was held that the statute did not run against the right of beneficiaries to compel him to account. It does not begin to run until he *openly repudiates his trust, and asserts and exercises individual ownership over the property.*

In *Matter of Watson* (163 App. Div. 41), the Appellate Division, Second Department, followed and applied those authorities and principles.

(2) Cases applying the ten-year Statute, *i. e.,* where the rights of the claimant are purely of equitable cognizance, **as,**

for example, proceedings by an administrator *de bonis non* to compel an accounting and delivery of the unadministered assets. (See *Matter of Rogers, supra; Matter of Lesser,* 119 App. Div. 507; *Matter of Lewis, supra.*)

(3) Cases applying the six-year Statute. (*Libby* v. *Van Derzee, supra; Matter of Barnes,* 25 Misc. 279; *Matter of Boylan, supra.*)

" By way of summary, therefore, it may be said that the result of the adjudications is, *that where a clear trust relationship exists, no limitation will begin to run against the cestui que trust until he has received or is chargeable with notice of the termination or repudiation of the trust by the trustee;* where a right is of purely equitable cognizance, the ten-year statute governs; and where a right is primarily legal, it will be barred at the end of six years after its accrual." (Italics supplied.) (*Matter of Deitz, supra,* 397, 398.)

If the instant case falls within either the second or third classification, the respondent's answer would state a complete defense because, if the petitioner's cause of action, either at law or in equity to compel an account (and thus to proceed to obtain similar relief in the Surrogate's Court), arose when she became of age, both the six- and ten-year Statutes have run.

So it remains to determine whether this case is within the first classification, that is, whether here, as between former guardian and ward, there continued to exist either an express or a constructive trust with respect to which the usual trust principle would apply, namely, that no statute would begin to run in favor of trustee against beneficiary until expiration thereof by limitation, or by express repudiation or termination by the trustee to the knowledge of the beneficiary.

If the contention is valid that whatever trust relationship that existed by reason of the legal relationship of guardian and ward terminated by limitation prescribed by statute when the ward came of age, there would be little meaning to authorities above discussed such as *Matter of Camp* and those cited by Surrogate WINGATE as examples of his first classification in *Matter of Deitz (supra).* The principle running through those cases, as I understand them, is that, although the relationship of guardian and ward ceases when the latter becomes of age, nevertheless, if, at that time, the guardian has possession, as guardian, of property of his ward and continues in possession of the same without accounting or payment, there results at least a constructive trust which continues so long as he continues to hold such possession of property of another, and

the right to compel him to account also continues, so that no statute begins to run against him unless he repudiates or terminates the trust with notice to the beneficiary.

As Judge PECKHAM said in the *Camp* case (*supra*, 389): "Although he may cease to be guardian upon the ward coming of age, yet so long as the property remains in his possession as guardian and unaccounted for, he must remain liable to account."

In the *Camp* case, the former ward was entitled to exercise only her right to compel an accounting. She could not compel payment in the event of a surcharge because the former guardian, being also life tenant, was entitled to possession and use of the corpus for life. As the court pointed out, however, the situation is different in the ordinary case (like the instant case) where the ward, on coming of age, is entitled to payment of the corpus.

"Upon the authority of *Seaman* v. *Duryea* (11 N. Y. 324), it is settled that the power of the surrogate to compel a guardian to account is not limited to determining the balance remaining in the hands of the guardian, but he may decree that the guardian pay over such balance to another guardian appointed in his stead or to the ward if he has attained his majority." (P. 390.)

From the foregoing, it is apparent that determination of the question whether or not either or both the Statutes of Limitations have run in this case may depend upon evidence showing whether or not the guardian continued to hold moneys or property of his former ward after she attained her majority and whether or not there had been repudiation or termination by him of the relationship of guardian by act of his own to the knowledge of his ward or whether a constructive trust arose which continued and, perhaps, prevented the running of the limitation statutes.

Turning, then, to the relief here sought, the petition asks for an accounting merely upon the allegation that the guardian qualified as such more than thirteen years since and never accounted. In other words, the petition does not allege that the guardian ever received any property belonging to the petitioner and does not allege that he continued to hold any such property after her majority. So, too, the answers merely set up the bare allegations that the limitation statutes have run since the ward attained her majority. From the affidavit submitted, however, by the guardian-respondent in support of his motion either to dismiss the petition or to bring the matter on for a hearing, additional facts are alleged which, in

the opinion of the court, would justify it in refusing to dismiss the petition for insufficiency or, on the other hand, to grant the prayer of the petition. In order that an opportunity may be given to establish all the facts relevant in determining whether the defenses of the Statutes of Limitations and of laches are available to the respondents, the respondents' motion will be granted to the extent of bringing on for a hearing the issues raised by the petition and the answers herein, and a date for such hearing will be fixed in the decree to be submitted hereon.

Submit decree on notice.