597 P.2d 18

Myron Edward HARBAUGH and Bert D. Harbaugh, Plaintiffs-Appellants,

v.

MYRON HARBAUGH MOTOR, INC., dba Harbaugh Motor Company, a corporation, Manuelita Harbaugh, Individually, and Manuelita Harbaugh, as Personal Representative of the Estate of Myron Harbaugh, Deceased, Defendants-Respondents.

No. 12892.

Supreme Court of Idaho.

June 28, 1979.

Rehearing Denied July 20, 1979.

Lloyd J. Webb, Webb, Burton, Carlson, Pedersen & Paine, Twin Falls, for plaintiffs-appellants.

Bert Larson, Parry, Robertson, Daly & Larson, Twin Falls, for defendants-respondents.

McFADDEN, Justice.

This is an appeal from a summary judgment entered in favor of respondents Harbaugh Motor, Inc., an Idaho corporation, and Manuelita Harbaugh, as an individual and as personal representative of the estate of her deceased husband, Myron Harbaugh. Plaintiffs-appellants are the sons of Myron Harbaugh, deceased, and his first wife, Della May Harbaugh, also deceased.

Appellants seek relief on two completely unrelated claims. The first claim is against their father's estate for an accounting and recovery of the value of property allegedly held by Myron Harbaugh in trust for appellants' benefit. The second claim is against Harbaugh Motors and Manuelita Harbaugh, individually and as personal representative of her deceased husband, for specific performance or damages arising from an alleged contract between appellants and their father to sell them the family business. The district court granted summary judgment to respondents on both claims. We reverse.

As to appellants' first claim, the existence of a trust relationship, the following facts may be gleaned from the pleadings, exhibits and affidavits. Myron Harbaugh and Della May Harbaugh were divorced in 1944. Custody of appellants, then aged 9 and 4, was awarded to their mother, Della May Harbaugh. One month after the divorce decree was entered, Della May died intestate. Myron Harbaugh was appointed as administrator of his ex-wife's estate and guardian of the persons and estates of his minor sons.

Della May's estate consisted of both real and personal property which descended in equal shares to her daughter by a previous marriage (who is not a party to this action) and to appellants. On May 17, 1945, a decree of final account and distribution was entered in the probate court in the estate of Della May.

On May 18, 1947, Myron Harbaugh married Manuelita Harbaugh, and two children were born of this marriage. Appellants meanwhile were in attendance at a boarding school in Blackfoot, Idaho.

On September 15, 1947, in guardianship proceedings, the probate court confirmed Myron Harbaugh's sale of the property appellants had inherited from their mother. Appellants' two-thirds interest in the property was sold for the sum of $6,094.32.

Apart from these facts, the record is silent. There is no evidence as to what became of the sale proceeds. There is no evidence as to any final accounting or formal termination of the guardianship. There is no evidence as to a repudiation or renunciation of the guardianship by Myron Harbaugh. There is no evidence that the appellants knew of the guardianship until after their father's death.

Appellants in their affidavits state that they had no knowledge of any inheritance until the death of their father in 1976. They contend that the proceeds were intermingled with their father's separate and community property, and that a trust relationship was thereby created for the benefit of appellants. They seek an accounting from the estate and they claim an equitable lien for the appreciated value of the inheritance administered by their father.

The district court apparently concluded that, as a matter of law, appellants' first

claim was barred by the statute of limitations. The court granted respondents' motion for summary judgment and denied a subsequent motion by appellants to reconsider the decision and to amend the judgment.

Appellants challenge the summary judgment on this claim on two grounds. First, that the statute of limitations does not begin to run against a ward until the guardianship has terminated and the ward knows or should know of such termination. And second, that summary judgment is improper here because there remain genuine issues of material fact to be determined. We find merit in both contentions and we reverse this portion of the summary judgment.

The question of when the statute of limitations commences to run in the guardian-ward relationship is one of first impression in Idaho. But this court has had occasion to decide the issue in analogous fiduciary contexts.

■ In an action by a beneficiary against his trustee, the rule has long been that the period of limitation begins when the trust is terminated, disavowed or repudiated by the trustee, and such conduct is unequivocally made known to the beneficiary. *Shepherd v. Dougan,* 58 Idaho 543, 76 P.2d 442 (1937); *Brasch v. Brasch,* 55 Idaho 777, 47 P.2d 676 (1935); *Davenport v. Bird,* 45 Idaho 280, 261 P. 769 (1927); *Olympic Mining & Milling Co. v. Kerns,* 24 Idaho 481, 135 P. 255 (1913).

In an action by the heirs of two deceased legatees of an Idaho testator against the testator's executor, the court said that the statute of limitations "has never begun to run because the position of the administrator is that of a fiduciary and the statute does not become operative until he repudiates the trust." *Barthel v. Johnston,* 92 Idaho 94, 97, 437 P.2d 366, 369 (1968).

■ In comparing the guardian to the trustee, Professor Bogert states that

"There is no doubt that the guardian is in one of those intimate relations usually called 'fiduciary' and that he therefore is in the same class with the trustee. Both alike are required to work for their beneficiaries with single-minded loyalty, to exclude all private gain, and to exhibit high candor and good faith in direct dealings with the one represented, and to perform personally the important functions of their positions. Both are held to the standard of reasonable skill and prudence.

Usually the principal ground for contrasting the guardian and trustee is said to be that the former has no 'title' whereas the latter has legal title."

G. Bogert, Trusts and Trustees § 13 (2d ed. 1965). We are of the opinion that the guardian-ward relationship is subject to the same rule with regard to the statute of limitations as is the trustee-beneficiary relationship. The statute does not begin to run against the ward so long as the fiduciary relationship is acknowledged, or until the guardian accounts and is discharged, or in some way repudiates the trust. *Young v. Young,* 201 Ark. 984, 147 S.W.2d 736 (1941); *In re Walls' Guardianship,* 179 Misc. 924, 38 N.Y.S.2d 879 (Sur.Ct.1942); *Bagwell v. Hinton,* 205 S.C. 377, 32 S.E.2d 147 (1944); G. Bogert, *supra* at § 951; 54 C.J.S. *Limitations of Actions* § 179d(5) (1948). This result is consistent with the provisions of I.C. § 15–5–210:

"A guardian's authority and responsibility terminates upon the death, resignation or removal of the guardian or upon the minor's death, adoption, marriage or attainment of majority, *but termination does not affect his liability for prior acts, nor his obligation to account for funds and assets of his ward.* Resignation of a guardian does not terminate the guardianship until it has been approved by the court."

(Emphasis added.) Although the guardian may no longer be responsible for his ward after the ward reaches the age of majority, the guardian's statutory duty to account for the ward's property continues. I.C. § 15–5–210; *In re Walls' Guardianship, supra.*

■ Appellants next contend that genuine issues of material fact remain on both claims and that the district court erred in

granting summary judgment. We have re- viewed the pleadings, interrogatories, affidavits and transcript of the show cause hearing and we agree that summary judgment was improper on these claims. Under the oft quoted rule, summary judgment can be granted only when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. I.R.C.P. 56(c); *Schaefer v. Elswood Trailer Sales,* 95 Idaho 654, 516 P.2d 1168 (1973). In ruling on a motion for summary judgment, it is well recognized that the facts are to be liberally construed in favor of the party opposing the motion and he is given the benefit of all favorable inferences which might be reasonably drawn from the evidence. *Farmer's Ins. Co. of Idaho v. Brown,* 97 Idaho 380, 544 P.2d 1150 (1976); *Straley v. Idaho Nuclear Corp.,* 94 Idaho 917, 500 P.2d 218 (1972). As set forth above, material issues of fact remain to be determined on appellants' first claim.

■ Appellants' second claim alleges the existence of contracts between themselves and their deceased father for the sale and conveyance of Harbaugh Motor Company. The corporation's primary assets consist of a truck and car stop at Bliss, Idaho, an automobile dealership and garage in Gooding, Idaho, and a retail petroleum business in Shoshone, Idaho. Appellants' father was the president and managing officer of the corporation.

Appellants allege in pleadings and affidavits that they left promising careers in other fields to return to Idaho and take control of their father's business upon the promise that the business would ultimately be transferred to them. Appellants Myron Edward Harbaugh and Bert D. Harbaugh contend that in addition to their salary, they were to receive a credit of 25 per cent and 30 per cent respectively of the net profits of the business which would accrue towards the eventual purchase of the business. A copy of an unexecuted handwritten "Proposed Sale Agreement" was attached to the affidavit of Bert D. Harbaugh explaining in more detail the terms of the transaction.

Respondent Manuelita Harbaugh denied that such a contract existed, and filed copies of the corporate minutes which stated that the parties could never reach a satisfactory conclusion to the negotiations for the sale. She maintained that appellants were merely employees of the corporation and not entitled to any accrued credits for future acquisition of the business.

The only non-interested person to shed light on the existence of such a contract was one Eleanor M. Jones, the office manager and bookkeeper for Harbaugh Motors from 1970 to 1973. Mrs. Jones testified at the show cause hearing that appellants' father had informed her of the salary plus accrued credit compensation scheme, and that he had told her that the credits were to be used later in the purchase of the corporation.

From this contradictory and incomplete factual base, we are wholly unable to say that as a matter of law no contract was entered into between appellants and their deceased father. The summary judgment is therefore reversed, and the case is remanded to the district court for further proceedings in conformity with the views herein expressed. The district court's award of attorney fees to respondents under I.C. § 12–121 is premature and is therefore reversed. Costs to appellants.

BAKES and BISTLINE, JJ., concur.

SHEPARD, Chief Justice, concurring and dissenting.

I concur in the majority opinion to the extent that it determines to reverse and remand this cause on the basis that issues of material fact remain for determination on appellants' second claim relating to the existence of contracts for the sale and conveyance of Harbaugh Motor Company. As to that portion of the majority opinion which relates to the claim of appellants based on the guardianship, I dissent.

I.C. § 15–5–210 provides in pertinent part, "A guardian's authority and responsibility terminates * * * upon the minor's * * * attainment of majority * * *."

As pointed out in the majority opinion, such termination does not effect his liability for his acts as guardian or his obligation to account to the ward. Herein, one of the wards, Myron Edward Harbaugh, reached the age of majority, and the guardian's authority and responsibility terminated, 20 years before the filing of the instant complaint. As to Bert D. Harbaugh, he reached the age of majority, and thus terminated the guardian's authority and responsibility, 15 years prior to the filing of the complaint.

Inexplicably, the majority does not discuss cases cited and relied upon by the respondents, such as *Southern Surety Co. v. Beal,* 134 Okl. 118, 272 P. 375 (1928), wherein it was said:

"The moment a ward is emancipated from the authority of his guardian, by reaching the age prescribed by law, his cause of action is complete and the statute of limitations begins to run. The reason assigned for this is, that instantly upon his arriving at age, he is emancipated from the control of the guardian, and the trust ceases to be a subsisting trust by its own limitation. From the moment the ward reaches the age when the law makes him free, what the guardian owes the ward becomes a debt for which he may immediately sue. All money due him and the property belonging to him are from that moment legally demandable, and he may sue the guardian on his bond for its payment and delivery. The right of action being then 'complete,' the statute begins to run from that time." At 377.

*See also Rorem v. Rorem,* 244 Iowa 980, 59 N.W.2d 210 (1953); *Courson v. Tollison,* 226 Ala. 530, 147 So. 635 (1933); *Sweet v. Lowry,* 123 Minn. 13, 142 N.W. 882 (1913); *In re Rahm's Estate,* 219 Pa. 203, 68 A. 186 (1907); *Wycoff v. Michael,* 95 Iowa 559, 64 N.W. 608 (1895).

Hence, I believe the case at bar is readily distinguishable from those Idaho cases cited in the majority opinion in that, in accordance with the above cited cases, there is a distinct difference between the ordinary trust situation and that of a guardian-ward.

Rather clearly, in a trust situation, the duty as trustee to the beneficiary continues by operation of law until the trust is terminated. In the guardian-ward situation, the relationship is terminated by operation of law at the time the ward reaches majority.

In *Olympia Mining & Milling Co. v. Kerns,* 24 Idaho 481, 135 P. 255 (1913), the court was dealing with a trust and the court held that not only was the statute of limitations applicable, but also a defense of laches was available.

In *Brasch v. Brasch,* 55 Idaho 777, 47 P.2d 676 (1935), the court was dealing with property held under a constructive trust brought about by the "perfidy of his son." The court held that in cases involving fraud a cause of action was not deemed to have accrued until the discovery of the fraud, but nevertheless in that fact situation, the court applied a three year period of limitation and held that the cause of action was barred.

The case of *Shepherd v. Dougan,* 58 Idaho 543, 76 P.2d 442 (1937), indicates little but that since the trustee continued to accept monies from the beneficiary of the trust and actively continued the trust in operation, no right of action accrued until the trust was repudiated and the action therein was filed within four months of the repudiation of the trust. Further, on rehearing, a four member court filed four separate opinions.

As to *Young v. Young,* 201 Ark. 984, 147 S.W.2d 736 (1941), the court there was careful to note that the action was commenced within three years of the time that the ward reached the age of majority. In *Bagwell v. Hinton,* 205 S.C. 377, 32 S.E.2d 147 (1944), the court said only "[w]hile the statute of limitations is not applicable in an action between a cestui que trust and a fiduciary, *so long as that relationship exists,* a claim may be barred by laches, but the application of the principle of laches must be determined by the facts in each individual case." At 156 (Emphasis added.) In *Bagwell* the guardian had died prior to the ward attaining majority and there was no administration had on the estate of the

guardian for six years. Less than one year after the administration of the estate of the guardian was commenced, the ward brought action and such was not held to be barred by the statute of limitations. The majority places reliance on the case of *In re Walls' Guardianship,* 179 Misc. 924, 38 N.Y. S.2d 879 (Sur.Ct.1942), and that case does indeed support the opinion of the majority herein. I would only note that such opinion was issued by a surrogate court (roughly equivalent to our magistrate court) and cited no authority in concrete support of its holding.

In cases which admittedly involve different relationships, *i. e.* heirs and state administration, the Idaho court has spoken to the disability of minors and the running of statute of limitations upon the attainment of the majority. In *Chapin v. Stewart,* 71 Idaho 306, 230 P.2d 998 (1951), the court discussed the imputation of knowledge resulting from documents of public record. It was there stipulated that the plaintiffs did not know of their interest until about one year before the initiation of the action. The court stated:

> "At the time of the conveyance by the joint tenants to Daniel Kennedy, and the payment to appellants' [plaintiffs'] mother of their share of the proceeds, the appellants were minors, 12, 15 and 17 years of age. The statute of limitations, of course, did not commence to run against them until they reached majority. * * * The youngest came of age in 1927, 22 years before they appeared to assert their rights in this action. Even though they were nonresidents of the state, that is too long a period of sleeping on their rights, to permit them now to assert that they did not have notice of the character of the possession of their uncle and aunt, Daniel and Pearl Kennedy, or that they were ignorant of their rights or of any fraud or mistake that may have been involved in the distribution or sale of the estate of their uncle William. The record fully supports the findings and judgment of the trial court that the appellants' claims are barred not only by limitations, but by laches as well." At 311, 230 P.2d at 1001.

*See also Coe v. Sloan,* 16 Idaho 49, 100 P. 354 (1909).

In summary, I would hold that in accordance with the authorities, the guardianship terminated at the time that the wards here reached the age of majority. As of the time of attainment of majority the statute of limitations began to run. I would hold that the assertion of the appellants that they never obtained actual knowledge of the existence of the guardianship until, and fortuitously, after the death of their father should be rejected on the basis that they are held to have constructive notice of the public records of the county. I would affirm the action of the trial court insofar as it relates to the guardianship.

DONALDSON, J., concurs.