725 P.2d 186

**FIRST BANK & TRUST OF IDAHO, an Idaho corporation, Plaintiff,**

v.

**William B. JONES, Defendant-Third Party Plaintiff-Appellant,**

v.

**T.D. JONES and Jedd Jones, III, Third Party Defendants,**

and

**Lawrence Jones, Third Party Defendant-Respondent.**

No. 15611.

Court of Appeals of Idaho.

Aug. 26, 1986.

John K. Looze, Pocatello, for defendant-third-party plaintiff-appellant.

J.D. Williams, Preston, for third-party defendant-respondent.

SWANSTROM, Judge.

This lawsuit began when First Bank & Trust of Idaho sued William Jones in 1978 to collect a debt. On November 15, 1978, William Jones filed a third-party complaint against his brother T.D. Jones and his uncle, Lawrence Jones. William later amended his third-party complaint to name his brother Jedd Jones III as an additional third-party defendant. In the third-party complaints, William sought accountings for partnership interests and recovery of damages flowing from a family voting trust. The dispute between William and the bank was settled, leaving the third-party action for resolution. William died and his estate was substituted as third-party plaintiff. The district court granted summary judgment to Lawrence on all counts, and partial summary judgment to T.D. and Jedd III. The court ruled the claims against Lawrence were barred by the applicable statutes of limitation. The court further found that the claims were prosecuted "frivolously and without adequate foundation" and awarded costs and attorney fees to Lawrence. Pursuant to I.R.C.P. 54(b) the district court certified the judgment for Lawrence as a final judgment. This appeal involves only that judgment and the court's ruling that William's claims against Lawrence were time-barred. We reverse in part and affirm in part.

Before addressing specific issues a brief background is necessary. Brothers Jedd Jr. and Lawrence Jones were partners together in several enterprises. In the 1930's and '40's they conducted business as the Jones Brothers Sheep Company. It was their practice that partnership land would be purchased by and for the partnership, but held in their individual names. Jedd Jones Jr. was married to Sophie and they had three sons, William, T.D., and Jedd III. Jedd Jr. died in 1944 and Sophie

succeeded to his partnership interests. William became a partner in the Jones Brothers Sheep Company, but in this action his interest in that business is disputed.

In 1948 Lawrence purchased the interests of Sophie and William in the Jones Brothers Sheep Company. Over the years, Sophie gifted various partnership and individually owned properties to her sons. The gifting of partnership assets resulted in the formation of what is referred to as the new Jones brothers partnership. This partnership consisted of Lawrence, who owned one-half, and T.D., William and Jedd III, who each owned one-sixth. In 1965 various Jones family members placed shares of the First National Bank of Malad City, later to become First Bank & Trust of Idaho, into a voting trust. Lawrence and T.D. Jones were trustees and officers of the bank. In 1970 the bank set up an employee stock option plan in order to raise capital. Lawrence and T.D. acquired stock under the plan, but no stock was issued to William under the plan since he was not an employee, officer or trustee of the bank. The voting trust was terminated in 1976.

With that background, we turn to the issues in this case. We first address whether the claims of William's estate against Lawrence involving the Jones Brothers Sheep Company are barred by a statute of limitation. The sale of the partnership assets to Lawrence in 1948 dissolved the partnership. However, the contract of sale did not dispose of all partnership property. Real estate, known as the Larson place, was omitted entirely from the contract. Record title to this land was in Lawrence's name. In January 1974, Lawrence sold one-half of the Larson place and deeded the other half to T.D. for the benefit of T.D., William, and Jedd III. This was the last action taken in winding-up the partnership. William, and now his estate, seek an accounting for this partnership asset.

The period for bringing an accounting action is four years under either I.C. § 5–217 for actions on oral contracts, or I.C. § 5–224 for actions for relief not cover-

ed by any specific statute. *Ramseyer v. Ramseyer*, 98 Idaho 47, 558 P.2d 76 (1976); *Heileson v. Cook*, 108 Idaho 236, 697 P.2d 1250 (Ct.App.1985). William brought his third-party complaint in November 1978, more than four years beyond both the 1948 dissolution of the partnership, *see* I.C. § 53–343, and the last transaction connected with the winding-up process. *See Ramseyer v. Ramseyer, supra.*

William's estate contends that the statute did not begin to run because William was never informed that the Larson place was partnership property. There is support in the record for this contention. The Larson place was held in Lawrence's name and not in the name of the partnership, and the final partnership audit fails to disclose the land as a partnership asset.

Partners are accountable to each other as fiduciaries. Idaho Code § 53–321(1) states:

> Every partner must account to the partnership for any benefit, and hold as trustee for it any profits derived by him without the consent of the other partners from any transaction connected with the formation, conduct, or liquidation of the partnership or from any use by him of its property.

"In an action by a beneficiary against his trustee, the rule has long been that the period of limitation begins when the trust is terminated, disavowed or repudiated by the trustee, and such conduct is unequivocably made known to the beneficiary." *Harbaugh v. Myron Harbaugh Motor, Inc.*, 100 Idaho 295, 297, 597 P.2d 18, 20 (1979). William's estate claims that Lawrence concealed the existence of the Larson place as a partnership asset and that its sale—without William's consent—bestowed upon Lawrence a benefit which he now holds as trustee for William. William's estate contends that William was kept uninformed of both the status of the Larson place as partnership property and its disposition in 1974.

■ Summary judgment should be granted only if the pleadings, depositions, admissions, and affidavits show that there is no genuine issue as to any material fact.

*Anderson v. Ethington,* 103 Idaho 658, 651 P.2d 923 (1982). The evidence must be viewed in favor of the party resisting the motion and that party is to be given the benefit of any reasonable inferences. *Id.* Under this standard, we conclude that there exist unresolved issues of fact regarding the winding-up of the Jones Brothers Sheep Company. "The duty of loyalty resulting from a partner's fiduciary position is such that the severity of a partner's breach will not be questioned. The question is only whether there has been any breach at all." *Bassan v. Investment Exchange Corporation,* 83 Wash.2d 922, 524 P.2d 233, 238 (1974). This question remains in this case and if an undisclosed breach exists the statute of limitation was tolled until the breach was unequivocally made known to William. *Harbaugh, supra.* Viewing the facts favorably to William, the status of the Larson place as partnership property was unknown to William until the initiation of the bank's lawsuit.

We are constrained to reverse and remand on the issue of the Jones Brothers Sheep Company. We note that the record contains evidence to the effect that William had no capital or income interest in the partnership, but was made a partner purely to gain tax advantages. The extent of William's interest is a factual question that needs to be resolved. Obviously if William had no interest that would be served by an accounting, such an accounting would be a futile gesture. However, if this interest existed and William was without knowledge, as claimed, then the statute of limitation does not bar an action for an accounting by the estate of William against Lawrence acting in his fiduciary capacity.

■ Next we address the statute of limitation question regarding the new Jones brothers partnership. William, T.D., and Jedd III acquired their combined one-half interest in this partnership through gifts from their mother. Again, a material issue of fact remains with regard to the applicability of the statute of limitation and again we reverse and remand. Lawrence, T.D., and Jedd III allege that William was bought out of the partnership in 1971. This was accomplished when a parcel of ground known as the "J.S. Davis property" was sold and the proceeds applied to William's debts. The third-party defendants contended that William, who was then heavily in debt, agreed to sell his interest in the partnership for these proceeds. To the contrary, William's estate asserts that this transaction did not buy out William's partnership interest. This contention is supported by conflicting evidence. A 1973 tax return and financial statements show William having an interest in partnership income and property. In 1980 a decree was entered partitioning partnership property between L.J. Farms, owned by Lawrence, and the other partners, including William. A partition decree cannot grant greater title to a party than that party previously held, 59 AM.JUR.2d *Partitions* § 189 (1971), however, in this case it is evidence supporting the inference that William still had a partnership interest as late as 1980. Since William's estate is to be given the benefit of all favorable inferences as the opposing party in a summary judgment proceeding, we conclude that it was error to grant summary judgment to Lawrence on the new Jones brothers partnership issue.

The final issue relates to the voting trust. In 1965 members of the Jones family, including William, placed their shares of the First National Bank of Malad City into the voting trust. T.D. and Lawrence Jones were named as trustees. The purpose of the trust was to protect the stockholders' equity and to preserve continuity of management at the bank. In 1970 the bank needed capital to expand its operation. To accomplish this, an employee stock purchase plan was set up so key employees could purchase unissued treasury stock of the bank. The plan was approved by the stockholders, including the voting trust. In March, 1972 Lawrence and T.D., who were officers of the bank, obtained stock under the plan. William's estate claims that this activity diluted William's ownership interest, constituting a

 

breach of the voting trust. In 1976 the voting trust was terminated. William's estate contends that under either a three-year statute, I.C. § 15–7–307, or a four-year statute, I.C. § 5–224, the action is not barred since it accrued in 1976 when the trust was terminated. We disagree.

 The reasoning urged upon us, that the statute of limitation began running at the time of termination of the voting trust, may be supportable if the action was one for an accounting. However, the amended third-party complaint prays for damages caused by Lawrence's and T.D.'s breach of trust. The damages are claimed to have arisen from the dilution of William's ownership interest in the bank as a result of the employee stock option plan. The dilution occurred, at the latest, in 1972, and that is when William's action for damages accrued. "It is well settled that in express trusts, and as between beneficiary and trustee, the Statute of Limitations runs from the date when the beneficiary knows or should by the use of ordinary care have known of a breach or a repudiation of the trust by the trustee." (Footnote omitted.) G.G. BOGERT & G.T. BOGERT, HANDBOOK OF THE LAW OF TRUSTS § 170 at 642 (5th ed. 1973). There is no justification present in the record for tolling the statutory period. The lapse of six years bars the claim under any statute conceivably applicable. Accordingly, we affirm the summary judgment in favor of Lawrence on the claim involving the voting trust.

Because we have reversed and remanded two of the three issues involved, we also reverse the award of attorney fees to Lawrence Jones. However, successful opposition to a summary judgment motion does not preclude an award of attorney fees if further proceedings convince the trial court that the action was brought "frivolously, unreasonably or without foundation...." I.R.C.P. 54(e)(1). At this stage of the litigation an award of fees is premature and therefore must be reversed.

This case is remanded to the district court for further proceedings on the Jones Sheep Company and new Jones brothers partnership issues. Costs to the estate of William Jones, no attorney fees are awarded.

WALTERS, C.J., concurs.

BURNETT, J., sat but subsequently deemed himself disqualified and did not participate in the final decision.